# Dolores F. Bushway v. Joseph Riendeau

[407 A.2d 178]

No. 29-79

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed September 17, 1979

456

*John A. Rocray,* Windham County State's Attorney, and *Jesse Corum, IV,* Deputy State's Attorney, Brattleboro, for Petitioner.

*Divoll and Doores, P.C.,* Bellows Falls, for Respondent.

Hill, J. The respondent, Joseph Riendeau, appeals from an order of the Vermont District Court, Unit No. 6, Windham Circuit, entered in a proceeding under Vermont's Revised Uniform Reciprocal Enforcement of Support Act (1968), 15 V.S.A. §§ 385–428, requiring him to pay twenty dollars per week to the petitioner for the support of their minor child. We reverse and remand.

The parties were married in Rockingham, Vermont, on June 15, 1957. They were divorced by the Windham Superior Court

on July 9, 1974. Four children were born of this marriage. In the superior court's order granting the divorce, the respondent was awarded custody of one child, Toni, and ordered to pay child support of ten dollars per week for each of the three children, Christine, Tracy, and Trudi, who remained in the petitioner's custody.

Shortly after the divorce, the plaintiff moved to Massachusetts. Because they desired to remain in Vermont, Christine and Tracy moved in with their father, and he supported them and Toni until they married or became self-supporting. Trudi has always lived with her mother, and it is the respondent's duty to support her that forms the subject matter of this proceeding.

The respondent has not paid any child support to the petitioner since she moved to Massachusetts in 1974. On October 10, 1978, she filed a petition for the support of Trudi under that state's Uniform Reciprocal Enforcement of Support Act, Mass. Gen. Laws Ann. ch. 273A, §§ 1–17 (West 1970), requesting that the respondent be ordered to pay her thirty-five dollars per week in child support. The Massachusetts district court certified "that the petition sets forth facts from which it may be determined that the respondent owes a duty of support," and "the Vermont District Court of the County of Windham and State of Vermont may obtain jurisdiction of the respondent or his property." Having done so, the Massachusetts court transmitted the certificate to the court named therein, as required by Mass. Gen. Laws Ann. ch. 273A, § 8 (West 1970).

The Vermont district court summoned the respondent, and a hearing was held on the 21st day of November, 1978. The respondent was represented by counsel. The petitioner appeared and testified in her own behalf. The court made findings and "[w]ithout deciding whether or not the support of the child Trudi should be the sole responsibility of the Respondent or the joint responsibility of the parties," found that the respondent has a duty of support. The court thereupon ordered him to pay twenty dollars per week to the plaintiff for the support of the child.

## I.

Before considering the respondent's claims of error, it is necessary briefly to examine the basic outline of Vermont's version of the Uniform Act and discuss some of the terms it employs.

The National Conference of Commissioners on Uniform State Laws approved the Uniform Reciprocal Enforcement of Support Act in 1950. *Handbook of the National Conference of Commissioners on Uniform State Laws* 123-24 (1950) (hereinafter cited as *Handbook* with designating date). The Conference amended the Act in 1952, 1958 and again in 1968. *Handbook, supra,* 223 (1968). The last amendments were so substantial that the Commissioners added the word "Revised" to the title of the Act. *Id.* For a general discussion of the 1950, 1952, and 1958 versions of the Uniform Act, see W. Brockelbank, *Interstate Enforcement of Family Support (The Runaway Pappy Act)* (1960). For a general discussion of the 1968 Revised Act, see W. Brockelbank, *Interstate Enforcement of Family Support (The Runaway Pappy Act)* (2d ed. 1971).

In 1953, the Vermont General Assembly adopted the 1952 version of the Act. 1953, No. 243, 15 V.S.A. §§ 231-269 (repealed 1969, No. 191 (Adj. Sess.), § 4). In 1970, this was replaced by the Revised Act. 1969, No. 191 (Adj. Sess.), § 5, 15 V.S.A. §§ 385-428 (hereinafter cited as RURESA § —, 15 V.S.A. § —).

The Revised Act is divided into four parts: Part I, RURESA §§ 1-4, 15 V.S.A. §§ 385-388, contains general provisions and definitions; Part II, RURESA §§ 5-6, 15 V.S.A. §§ 391-392, is the criminal enforcement section of the Act; Part III, RURESA §§ 7-34, 15 V.S.A. §§ 395-422, provides for the civil enforcement of duties of support; and Part IV, RURESA §§ 35-43, 15 V.S.A. §§ 423-428, establishes a system for the registration of foreign support orders.

This appeal is from a proceeding under Part III of the Revised Act and depends solely on our construction thereof. In construing it, we must apply not only the traditional maxims of statutory construction but also one mandated by the Legislature: "This act shall be so construed as to effectuate

its general purpose to make uniform the law of those states which enact it." 1969, No. 191 (Adj. Sess.), § 2.

█ The civil enforcement mechanism created by Part III of the Revised Act (and its predecessors) is a simple two-state procedure designed to enable a person to whom a duty of support is owed (the obligee)[1] to compel the person owing the duty (the obligor) to abide by it when absent from the obligee's state of residence, without necessarily having to leave the state. *Handbook, supra,* 173 (1950); Kelso, *Reciprocal Enforcement of Support: 1958 Dimensions,* 43 Minn. L. Rev. 875 (1959); Note, *The "Un-Uniform" Reciprocal Enforcement of Support Act,* 9 J. Fam. L. 325 (1969). " 'Duty of support' means a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for divorce, separation, separate maintenance, or otherwise and includes the duty to pay arrearages of support past due and unpaid." RURESA § 2(b), 15 V.S.A. § 386(2).

An obligee commences the proceeding by filing a petition that alleges facts constituting a duty of support in the appropriate court of his or her state of residence (the initiating state). RURESA § 11, 15 V.S.A. § 399. That court (the initiating court) then determines (1) whether the petition alleges sufficient facts to establish a duty of support, and (2) whether a court of another state (the responding state) may obtain jurisdiction over the respondent. RURESA § 14, 15 V.S.A. § 402; H. Clark, Jr., The Law of Domestic Relations in the United States § 6.6, at 207 (1968). If the initiating court finds that both requirements are met, it so certifies and forwards three copies of the petition and certificate and one copy of the initiating state's Uniform Act to the appropriate court in the responding state. *Id.* That court (the responding court) dockets the case and notifies the prosecutor

---

[1] The term " 'obligee' means a person including a state or political subdivision to whom a duty of support is owed or a person including a state or political subdivision that has commenced a proceeding for enforcement of an alleged duty of support or for registration of a support order. It is immaterial if the person to whom a duty of support is owed is a recipient of public assistance." RURESA § 2(f), 15 V.S.A. § 386(6).

(state's attorney), who must then prosecute it "diligently." RURESA § 18, 15 V.S.A. § 406. After hearing, the responding court makes an evidentiary determination whether a duty of support exists. The obligee may but need not appear. RURESA § 20, 15 V.S.A. § 408. If such a duty is found to exist, the responding court may order the respondent to make payment to the court. RURESA § 24, 15 V.S.A. § 412. The responding court must forward payment to the initiating court, RURESA § 28, 15 V.S.A. § 416, and the initiating court must forward it to the obligee. RURESA § 29, 15 V.S.A. § 417. See Kelso, *supra;* Note, *supra.*

## II.

The first claim raised by the respondent is that the Vermont district court lacked subject matter jurisdiction to hear this petition. His attack proceeds from two separate positions that are involved in the circumstances of this case.

The first is that the original Uniform Act was occasioned by the acute need for an expeditious and inexpensive remedy against the obligor who flees to another jurisdiction and thereby avoids the duty to support his dependents because they have neither the facilities nor the means to pursue him and institute suit in the state to which he has fled. *State of Illinois ex rel. Shannon* v. *Sterling,* 248 Minn. 266, 269–70, 80 N.W.2d 13, 16–17 (1956); *Bourdon* v. *Bourdon,* 105 N.H. 432, 434, 201 A.2d 889, 891 (1964). From this, the respondent argues that the Vermont General Assembly never intended the Revised Act to apply in favor of dependents who move into another state against the obligor who remains at home.

His second, somewhat related point is that the General Assembly also never intended the Revised Act to apply where the responding court or another court of the responding state granted a divorce and provided for the support of the minor children of the parties. This is because when so applied, the Act derogates from the continuing jurisdiction of the court that granted the divorce to annul, vary, or modify any order it has made concerning the care, custody, and maintenance of those children during their minority. See generally *Beaudry* v. *Beaudry,* 132 Vt. 53, 55–56, 312 A.2d 922, 924 (1973); *Brooks* v. *Brooks,* 131 Vt. 86, 89–90, 300

A.2d 531, 533 (1973); *Randall* v. *Randall,* 129 Vt. 432, 434, 282 A.2d 794, 795 (1971); 15 V.S.A. § 292. In these circumstances, he argues, relief for the obligee is through the court that granted the divorce.

Several sections of the Revised Act stand in opposition to the respondent's claim. Section 4, 15 V.S.A. § 388, states that "[d]uties of support arising under the law of this state . . . bind the obligor present in this state regardless of the presence or residence of the obligee." Section 30, 15 V.S.A. § 418, specifically demands that the "responding court shall not stay the proceeding or refuse a hearing under this chapter because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption, or custody in this or any other state." Section 1, 15 V.S.A. § 385, specifies that "[t]he purposes of [the Act] are to improve and extend by reciprocal legislation the enforcement of duties of support," and section 3, 15 V.S.A. § 387, directs that the remedies "provided are in addition to and not in substitution for any other remedies." Finally, under section 33, 15 V.S.A. § 421, the Act applies not only when the obligor and obligee are in different states but when they "are in this state but in different counties."

▋ The Revised Act and its predecessors are remedial in nature and are "to be construed liberally with reference to the object to be obtained, and every endeavor should be made by the courts to render [them] operable." *Lambrou* v. *Berna,* 154 Me. 352, 356, 148 A.2d 697, 700 (1959). See *M——* v. *W——,* 352 Mass. 704, 707, 227 N.E.2d 469, 471 (1967); *Davidson* v. *Davidson,* 66 Wash. 2d 780, 785, 405 P.2d 261, 265 (1965). Viewing these provisions of the Act in this context, it is not surprising that courts considering the issue first raised by the respondent have ruled, as Chief Justice Kennison did in *Bourdon* v. *Bourdon, supra,* that "[a]lthough the . . . Act is aimed at preventing runaway fathers from escaping their obligations, it is not limited to that one objective. . . . 'The Act applies to any situation where there is a breach of a duty of support and the flight of the father is not a controlling fact.' " 105 N.H. at 434, 201 A.2d at 891 (quoting W. Brockelbank, *supra*). *Harmon* v.

*Harmon*, 160 Cal. App. 2d 47, 55–56, 324 P.2d 901, 906–07, *cert. den.*, 358 U.S. 881 (1958) ; *State of Illinois ex rel. Shannon* v. *Sterling, supra; Commonwealth* v. *Mexal*, 201 Pa. Super. 457, 459–62, 193 A.2d 680, 681–82 (1963) ; see H. Clark, Jr., *supra.* Also unremarkable is the conclusion of courts addressing the second aspect of the respondent's claim that this legislation creates an exception to the admittedly continuing jurisdiction of a court that grants a divorce, whether it be a responding court or some other court of the responding state, even when that jurisdiction normally is considered to be exclusive. See *Thompson* v. *Thompson*, 93 So. 2d 90, 92–93 (Fla. 1957) ; *Paul* v. *Paul*, 439 S.W.2d 746, 748–50 (en banc) (Mo. 1969) ; cf. *Wheeler* v. *Wheeler*, 196 Kan. 697, 700–04, 414 P.2d 1, 4–7 (1966) (where responding court is not court that granted divorce, it should transfer Uniform Reciprocal Enforcement of Support Act proceeding to the latter court).

■■■ The respondent has attempted to bolster both aspects of his claim by focusing on the proximity of the petitioner's residence in Massachusetts to the location of the Windham Superior Court (33 miles). The cases last cited, however, establish that the proximity of the petitioner to the court that granted the divorce is irrelevant to the question of jurisdiction. When the obligor or obligee crosses the country, the state border, or a county line the remedies provided by the Act become available. In discharging our duty to construe the Act so as to make uniform the law of the states that enact it, we have no alternative but to reject the respondent's claim and hold that the Vermont district court acquired subject matter jurisdiction over this petition.

### III.

The respondent's second claim is that the Vermont district court erred in finding that he has a duty to support his daughter Trudi, but his brief fails to indicate the basis for this claim. We might well dispose of it on the ground that inadequately briefed issues are waived, *Tallarico* v. *Brett*, 137 Vt. 52, 61, 400 A.2d 959, 965 (1979), but since the Act has been before this Court only once before, *Mancini* v. *Mancini*, 136

Vt. 231, 388 A.2d 414 (1978), we take the opportunity to comment briefly.

The duty of support sought to be enforced in this proceeding is the duty imposed on the respondent by virtue of the divorce order entered by the Windham Superior Court. The Act is designed to enforce such a duty, RURESA § 2(b), 15 V.S.A. § 386(2), and provides for the introduction of a certified copy of the prior order into evidence. RURESA § 23, 15 V.S.A. § 411. The order of the Windham Superior Court was before the district court, and, so far as the record shows,[2] the respondent did not raise any of the defenses to it that are permitted under the Act.[3] In the absence of such a defense, that order established his duty to support Trudi, and the district court cannot be put in error for so finding.

## IV.

The remaining claims raised by the respondent all deal with whether the district court was entitled to order him to pay child support in an amount different from that specified in the divorce order entered in the superior court. We hold that it was not, for a reason unrelated to any of those offered by the respondent.

In our judgment, section 30 of the Revised Act, 15 V.S.A. § 418, requires this result. It provides, in part, that "[a] responding court shall not stay the proceeding or refuse a hearing under this chapter because of any pending or prior action or proceeding for divorce, . . . [but] [i]f the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the petition being heard, the court *must* conform its support order to the amount allowed in the other action or proceeding." (Emphasis added.) This provision is unambiguous, and it is our duty to enforce it as writ-

---

[2] The documents filed in this case do not indicate whether any defense to the order was made, and we do not know whether any were raised orally at the hearing because the parties stipulated that no transcript would be required on appeal. V.R.A.P. 10(b).

[3] A paternity defense or any of the defenses available to a defendant in an action to enforce a foreign money judgment may be raised. RURESA § 23, 15 V.S.A. § 411.

ten. *Christie* v. *Dalmig, Inc.,* 136 Vt. 597, 599, 396 A.2d 1385, 1387 (1979). In this case, the superior court's divorce order provides for the support of Trudi, and, under this section, the district court erred by not conforming its order to the amount allowed by the prior order, ten dollars per week.

The petitioner asserts that the uniform interpretation of the Act is that a responding court has the power to make an independent order fixing an amount of support different from that called for by a prior divorce order, but all of the cases she cites and similar cases our own research has disclosed were decided under the 1950, 1952, or 1958 versions of the Act. *Ainbender* v. *Ainbender,* 344 A.2d 263, 265 (Del. Super. 1975) ; *Moore* v. *Moore,* 252 Iowa 404, 408–13, 107 N.W.2d 97, 99–102 (1961) ; *Olson* v. *Olson,* 534 S.W.2d 526, 529–31 (Mo. Ct. App. 1976) ; *Davidson* v. *Davidson, supra.* The language of section 30 that we deem controlling was added by the 1968 amendments. Although the Commissioners did not comment at length on the change, they did indicate that they considered it to be substantial. *Handbook, supra,* 223 (1968). Our holding that the amendment disapproves of the view that in these circumstances a responding court may independently determine the amount of support due is consistent with the Commissioners' intention to effect a substantial change. The cause, therefore, must be remanded for entry of a new order conforming the amount of support due to the amount specified in the prior divorce order.

*Reversed and remanded.*