### Mary Alice Mancini v. Ronald J. Mancini

[465 A.2d 272]

No. 82-215

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 27, 1983

*John J. Easton, Jr.*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Gordon C. Gebauer*, Law Clerk (On the Brief), Montpelier, for the State of Vermont.

*Salmon & Nostrand*, Bellows Falls, for Defendant-Appellant.

*Carl R. Ajello*, Attorney General, and *Robert T. Morrin*, Assistant Attorney General, Hartford, Connecticut, for State of Connecticut.

Billings, C.J. The defendant-appellant, Ronald Mancini, appeals the February 17, 1982, order of the District Court, Unit No. 1, Bennington Circuit, denying his motion to modify an out-of-state support order registered in Vermont pursuant to 15 V.S.A. §§ 385–428, the Uniform Reciprocal Enforcement of Support Act (hereinafter URESA). The original enforcement order, dated September 15, 1981, provided that defendant pay to the Bennington District Court Clerk for the benefit of plaintiff-appellee, Mary A. Mancini, $500 per week in alimony and child support, as well as $100 per week toward defendant's arrearage which, at that time, exceeded $100,000. Defendant took no direct appeal from the 1981 enforcement order; instead he filed this motion to modify that order in January of 1982.

This URESA action has been before the Vermont courts since 1977, although the circumstances surrounding the case originated in Connecticut. There, in August of 1975, defendant, then an insurance executive earning $50,000 a year, deserted his wife and six children. In September of that year plaintiff filed for divorce in a Connecticut superior court. That court, in 1976, ordered defendant to pay temporary alimony and child support in the amount of $340 per week. Under threat of contempt proceedings, defendant eventually made several of these temporary payments. However, shortly thereafter he quit his job and disappeared to Europe for a two and

one-half week vacation. Upon his return defendant moved to Vermont, taking with him some $17,000 in cash, and leaving no forwarding address.

In February of 1977, having discovered defendant's whereabouts, plaintiff filed a URESA petition in the Connecticut courts for weekly support in the amount of $340. After receiving notice of the support action, defendant commenced his current employment at the Fudge Factory, a candy-making shop in Manchester, Vermont, at a salary of $150 per week. A hearing on the petition was held in June of 1977, in the District Court, Unit No. 6, Windsor Circuit. On July 7, 1977, defendant was ordered to pay $50 per week in alimony and support, as well as accrued arrearages in the amount of $9,995. On appeal to this Court, the support order was affirmed; the arrearage order, however, was vacated due to lack of fair notice on that issue. *Mancini* v. *Mancini*, 136 Vt. 231, 388 A.2d 414 (1978).

On May 15, 1978, the Connecticut superior court rendered a judgment for divorce under which, among other things, defendant was ordered to pay $200 weekly to his wife as alimony, and $50 weekly for the support for each of the six minor children, thus making a total weekly obligation of $500. After a hearing in January of 1980, the Connecticut divorce order was registered in Vermont under the provisions of 15 V.S.A. §§ 423–428; this order thereby superseded the 1977 support order, requiring defendant to make weekly support payments of $500. Defendant petitioned the district court to vacate the registration, arguing the res judicata effect of the 1977 Vermont support order, as well as his inability to pay. The court denied the petition, and defendant took no further appeal from that order.

Plaintiff, who had been supporting herself and her children on welfare since her husband's flight from the state and his failure to met his support obligations, filed a motion under URESA to enforce the support provisions of the Connecticut divorce order. A hearing was held in July of 1981, in the Bennington District Court. The court found, inter alia, that defendant was in arrears under the temporary support order and the final divorce order in excess of $100,000. The court further found, based on the evidence, that defendant had voluntarily left his job in Connecticut, had moved to Vermont, and had taken his current job at the Fudge Factory for only $150 per week, all in an effort to avoid his support obligations. Based

on such findings, the court concluded that defendant's voluntary reduction in earnings did not justify reducing the support order. On September 15, 1981, the court ordered defendant to commence paying to the Bennington District Court Clerk, for the benefit of defendant's wife and children, the amount of $500 weekly, with an additional $100 per week against the accrued arrearage. Defendant neither appealed from, nor complied with, this order.

In January of 1982, defendant moved to modify the September 15, 1981, order, arguing that "he does not have the present ability nor the earning capacity to meet the support payments," and that although he "has used reasonable efforts to secure higher paying employment," he has to date been unsuccessful. On February 1, 1982, a hearing was held on the modification motion in the Bennington District Court, and on February 17, 1982, the trial court issued findings of fact, conclusions of law and an order denying defendant's motion. The court found that defendant had voluntarily left his job and fled the state at a time when his divorce action was pending and support orders against him were outstanding, in an effort to avoid his obligations. The court further found that defendant's recent attempts to find higher paying employment were nothing more than "a sham effort" in response to the September 15, 1981, order. Thus, the court concluded that since a voluntary reduction of income could not form the basis for modifying a support order, defendant had failed to prove that he lacked the actual and potential ability to comply with the order.

We note at the outset that 15 V.S.A. § 428(a) provides that "[u]pon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." 15 V.S.A. § 428(b) gives the defendant twenty days after the mailing of notice of the registration in which to petition the court to vacate the registration, or to seek other relief. If he does not so petition, the registered support order is confirmed.

As noted above, the defendant petitioned the January 14, 1980, registration of the Connecticut divorce and $500 support order on two grounds: res judicata and inability to pay. The

district court found that, under the provisions of URESA, 15 V.S.A. § 419, there is no res judicata effect of the 1977 support order. Further, relying on *Bushway* v. *Riendeau,* 137 Vt. 455, 407 A.2d 178 (1979), the court held that:

> If the [foreign divorce] action is concluded elsewhere before a hearing is held in Vermont and the judgment therein provides for the support demanded in the Vermont proceeding, then the Vermont court must conform its support order to the amount allowed in the other action.

Two years later this Court held that *Bushway* does not control in cases where the defendant's inability to pay is at issue, and that Vermont courts must be able to alter the manner of payment to reflect the defendant's inability to pay. *McEvily* v. *McEvily,* 140 Vt. 279, 281, 437 A.2d 1110, 1111 (1981). However, as defendant did not appeal the denial of his petition to vacate the registration order, that order stands.

█ It is well established that in order to seek modification of a support order pursuant to 15 V.S.A. § 758, then in effect, allegation and proof of a substantial change of circumstance from the time of the order sought to be modified is a jurisdictional prerequisite, *Ohland* v. *Ohland,* 141 Vt. 34, 38, 442 A.2d 1306, 1308 (1982); *Grant* v. *Grant,* 136 Vt. 9, 12, 383 A.2d 627, 629 (1978), and the burden of establishing this change of circumstances is on the party seeking the modification. *Cliche* v. *Cliche,* 140 Vt. 540, 542, 442 A.2d 60, 61 (1982). Here, defendant sought to modify the $600 per week enforcement order entered on September 15, 1981. Surprisingly, the jurisdictional issue was apparently overlooked by the trial court. Nevertheless, it is clear that defendant's circumstances at the time of the January, 1982, hearing were identical to those in existence when the court issued its September, 1981, order. In fact, at the time of the original divorce decree in 1978, and at all subsequent times, defendant's sole source of income has been his weekly wage from the Fudge Factory. Moreover, according to defendant's testimony below, his monetary position has recently improved, due to an increase in his salary from $150 to $180 weekly. Nor have defendant's claimed expenses changed significantly between September of 1981 and January, 1982.

■■■ Viewing the evidence in the light most favorable to plaintiff as the prevailing party, *Lanphere* v. *Beede,* 141 Vt. 126, 129, 446 A.2d 340, 341 (1982), we find that defendant's only allegation in support of his motion was his financial inability to comply with the order, and his only proof of changed circumstances were his unavailing attempts to secure higher paying employment. Nor did the court find sufficient credible evidence that defendant's earning capacity was itself impaired As this alone is insufficient to meet the jurisdictional prerequisite, the modification motion was correctly denied. Although the trial court failed to reach this issue, and so came to the right result for the wrong reasons, "[w]e will affirm a judgment which is correct, even if the grounds stated in support of it are erroneous." *Pike Industries, Inc.* v. *Middlebury Associates,* 140 Vt. 67, 71, 436 A.2d 725, 727 (1981).

*Affirmed.*

Although present for argument, Justice Peck did not participate in the decision.

### On Motion for Reargument

**Billings, C.J.** On the handing down of the opinion, defendant moved for leave to reargue. V.R.A.P. 40. By reason of matters brought to our attention relating to the procedural posture of the case below, the opinion was recalled and changes were made.

The revision of the opinion does not change the result previously reached, and the entry order is not affected.

*Motion for reargument denied.* See *State* v. *Lapham,* 135 Vt. 393, 408, 377 A.2d 249, 258 (1977).