GAIL HURT TAYLOR, Appellant, v.
ALAN C. VILCHECK, Respondent.

No. 16581

THE COUNTY OF YOLO, on behalf of CHERYL ANN
DRAKE, Appellant, v. ROBERT THOMAS DRAKE,
Respondent.

No. 17017

November 20, 1987 745 P.2d 702

*Brian McKay,* Attorney General, *Nancy Ford Angres,* Deputy
Attorney General, Carson City, for Appellant Gail Taylor; *Rex
Bell,* District Attorney, *John B. Squires* and *V. Monet Woods,*
Deputy District Attorneys, Las Vegas, for Appellant County of
Yolo.

*Rick Lawton,* Fallon, for Respondent Alan Vilcheck; *Brian H.
Breedlove,* Las Vegas, for Respondent Robert Drake.

## OPINION

By the Court, MOWBRAY, J.:

These are separate appeals from orders of the Fifth and Eighth Judicial District Courts enforcing the child support obligations of the individual respondents pursuant to the provisions of Nevada's Revised Uniform Reciprocal Enforcement of Support Act (RURESA). *See* NRS 130.010 *et seq.* Because of the similarity of the issues of law presented, we have consolidated these appeals for decision. *See* NRAP 3(b). Specifically, in both cases, the parties contest the jurisdiction of the district courts of this state, in accordance with Nevada's RURESA statutes, to enter child support orders which alter the amount of support payments due under prior child support decrees. In light of the arguments presented to this court by the parties to these appeals, we perceive a need to clarify the law of this state relating to the authority of our district courts to award child support payments in RURESA proceedings that differ from previous awards. Before discussing the specifics of these two cases, however, a brief overview of the law in this area is warranted.

The purpose of the Revised Uniform Reciprocal Enforcement of Support Act is to improve and extend by reciprocal legislation in separate jurisdictions the enforcement of existing duties of family support. *See* NRS 130.030; State ex rel. Welfare Div. v. Vine, 99 Nev. 278, 283, 662 P.2d 295, 298 (1983). Generally speaking, RURESA itself "creates no duties of family support, but is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another." *See* Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supercede or Nullify Any Other Order,* 31 ALR 4th 347, 351 (1984) *citing* Uniform Reciprocal Enforcement of Support Act, Commissioner's Prefatory Note, 9B U.L.A. 382 (1968); *see also* NRS 130.280; Vix v. State of Wisconsin, 100 Nev. 495, 686 P.2d 226 (1984) (in RURESA proceedings, a court only has jurisdiction to

order enforcement of pre-existing duties of support). Moreover, the remedies provided by the act are "in addition to and not in substitution for any other remedies." *See* NRS 130.050. The act further provides that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." *See* NRS 130.020.

As discussed below, the major issue in these appeals involves the construction and effect of NRS 130.280(1) which directs that:

> A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar law or any other law, regardless of priority of issuance.

Prior to 1981, this statute contained language which permitted a Nevada court in a RURESA proceeding to modify a previous support award but only if the modification was specifically provided for in the reciprocal support order. *See, e.g.,* Peot v. Peot, 92 Nev. 388, 551 P.2d 242 (1976). The legislature, however, specifically deleted this modification provision from NRS 130.280 by amendments adopted in 1981. *See* 1981 Nev. Stats. ch. 418 § 5.

With the above policy considerations in mind, we turn to a discussion of the merits of the present appeals.

### *Taylor v. Vilcheck, No. 16581*

In 1977, appellant Gail Hurt Taylor and respondent Alan Vilcheck obtained a divorce decree, pursuant to a settlement agreement, in Jefferson County, Kentucky. The agreement and the divorce decree awarded custody of the parties' minor child to appellant Taylor. In 1981, the Jefferson County Circuit Court entered an order modifying the original settlement agreement and divorce decree, pursuant to a further agreement between the parties, to provide, *inter alia,* that Vilcheck would pay Taylor $65.00 per week in child support until the child attained the age of eighteen years. Thereafter, appellant apparently remarried and moved with her child to Colorado, where in 1984 she sought enforcement of the Kentucky decree with respect to the award of weekly child support and $2,435 in alleged arrearages. The Colorado initiating court forwarded the action to the Nye County District Attorney, who, pursuant to Nevada's RURESA statutes, filed the instant action against respondent. A hearing was held before the district court on September 12, 1984. Respondent Vilcheck appeared in proper person and moved the district court

to reduce his prospective child support payments.[1] On May 14, 1985, the district court entered a written order reducing Vilcheck's prospective monthly child support payments to $150 per month. The district court specifically ruled that its "determination was made after an examination of [Vilcheck's] income, expenses, and ability to pay." Additionally, the district court ordered that a judgment for the amount of arrearages would be entered after it received "documentation of those arrearages from the initiating court." This appeal followed.

Appellant Taylor first contends that prior holdings of this court prohibit the district court from entering an order enforcing prospective monthly support payments against Vilcheck in a lesser amount than that provided in the prior Kentucky decree. Specifically, appellant observes that in Vix v. State of Wisconsin, 100 Nev. 495, 497, 686 P.2d 226, 227 (1984), this court stated that in a RURESA proceeding, "a district court only has jurisdiction to order the enforcement of a *pre-existing* duty of child support, and furthermore is prohibited from modifying or nullifying a pre-existing duty to any extent." (Emphasis in original.) *See also* NRS 130.280(1), *supra.*

Respondent correctly contends, however, that our holding in *Vix* is inapposite, and that the above-cited language in *Vix* should not be construed to prohibit the actions of the district court in the instant case. In *Vix*, the parties' initial divorce decree awarded custody of a minor child to the father. Thereafter, in violation of the custody award, the mother took the child to Wisconsin, and refused to return him to the father. In response to a RURESA action filed by the State of Wisconsin seeking reimbursement for child assistance payments, the Nevada district court entered an order directing the father to pay the mother prospective child support in the amount of $175 per month. As we noted in *Vix*, the Nevada RURESA court thereby altered the previously imposed obligations of the parties "in essence changing [the father's] status to that of a non-custodial parent owing partial child support in the specific sum of $175 a month. . . ." *See Vix*, 100 Nev. at 497, 686 P.2d at 227. Thus, we concluded in *Vix* that "not only did the court's URESA order purport to alter [the father's] financial obligations . . ., it essentially changed the custodial status of the parties." *Id.* Consequently, we held that *"[s]uch changes* in the *custodial status and financial obligations* of the parties were clearly outside the scope of a URESA proceeding."

---

[1] We note that the record on appeal does not contain a written copy of respondent's motion. We also note that respondent Vilcheck now has retained counsel to represent him in this appeal. Additionally, the Attorney General's Office of the State of Nevada presently is representing appellant Taylor on appeal.

(Emphasis added.) *Id.* Moreover, we observed that *"[s]uch changes* may only be made in a proceeding in which a party has brought a motion to modify the original divorce decree or any subsequent custody or support orders." (Emphasis added.) *Id.* at 497-98, 686 P.2d 227-28.

Unlike the situation in *Vix,* the district court's order in the present case did not modify or alter any previously-imposed custodial duties or obligations. The district court merely found that although respondent was under a previously-imposed child support obligation, his financial status at the time of the hearing below precluded him from paying the full amount set forth in the Kentucky decree. Such an order has *no effect* on the prior decree issued by the Kentucky court. *See* NRS 130.280; Foster v. Marshman, 96 Nev. 475, 478, 611 P.2d 197, 199 (1980) (a Nevada RURESA order setting support payments at $30 per month per child did not modify a prior California support obligation setting child support payments at $60 per month per child); Campbell v. Jenne, 563 P.2d 574 (Mont. 1977) (Idaho and Montana RURESA orders setting child support at a lesser amount than provided in a prior Nevada divorce decree did not modify the Nevada decree; the Nevada decree was entitled to full faith and credit in a separate civil action for enforcement of that judgment). Moreover, we note that the full amount of support ordered by the Kentucky court will continue to accumulate under that prior order, and appellant may seek enforcement of any arrearages due under the Kentucky decree, subject to a credit for any payments made pursuant to the Nevada RURESA order, in an appropriate civil action. *See* Foster v. Marshman, *supra. See also* NRS 130.265(2) (court must conform its support order to the amount allowed in the prior proceeding unless the court is of the opinion for good cause shown that another amount would be proper); McEvily v. McEvily, 437 A.2d 1110 (Vt. 1981) (the practical difficulties involved in enforcing an order that an obligor is unable to carry out mandate that a court must be able to alter the manner of payment to reflect the inability of the obligor to comply). As discussed in more detail below, however, in a RURESA proceeding, a Nevada court may only increase the amount of payments due under a prior support decree in order to structure a payment schedule calculated to decrease accrued arrearages.

In light of the above, we hold that, in a RURESA proceeding, a district court of this state has jurisdiction to enter an order enforcing child support payments in an amount less than the amount set forth in a prior child support decree, where the obligor has demonstrated that his or her present financial condi-

tion warrants such a reduction. Based on our review of the record in Docket No. 16581, we are not persuaded that the district court abused its discretion in enforcing a reduced amount of support payments. Consequently, we affirm the order of the district court.

We also note that our review of this appeal was hampered by the inadequate state of the record on appeal. The record on appeal in the instant case does not contain a copy of respondent's written motion seeking a reduction, nor does it contain a transcript of the hearing below, or a settled and approved statement of the evidence and proceedings. *See* NRAP 10(b), (c) and (e). As we have previously held, in the absence of a prima facie showing that the judgment of the district court was clearly erroneous, or that it was not based on substantial evidence, this court must assume that the record supports the lower court's factual finding that a reduction was warranted. *See* Jaramillo v. Blackstone, 101 Nev. 316, 704 P.2d 1084 (1985); State ex rel. Lyon v. Lyon, 75 Nev. 495, 346 P.2d 709 (1959).

Appellant Taylor further contends that the lower court abused its discretion by delaying entry of the judgment for the amount of alleged arrearages until it received documentation of those arrearages from the Colorado initiating court. Appellant notes that the only evidence in the record before us relative to the amount of arrearages due is contained in a notarized affidavit of Gail Taylor asserting that "$2,435 is due and owing as arrears from the period of May 20, 1981, to and including May 17, 1984." Appellant further asserts that the district court erred by requiring documentation from the Colorado initiating court because, under the Kentucky decree, respondent was to pay support directly to appellant. Appellant maintains, therefore, that the Colorado court is not in a position to document any arrearages.

Respondent observes, however, that appellant's initial complaint sought an order toward arrearages in the amount of $2,435, *as of May 17, 1984,* and also requested the court to "please update" the arrearages. Similarly, the order and certificate issued by the Colorado initiating court indicated that the arrearages should be updated subsequent to May of 1984. Accordingly, respondent contends that the lower court simply was seeking an updated affidavit or deposition relating to the amount of arrearages due after May 17, 1984.

NRS 130.210(1) provides in pertinent part that "the affidavit of the obligee is admissible into evidence subject to challenges using the procedure proscribed in NRS 130.205." NRS 130.205, in turn, provides:

> If the obligee is not present at the hearing and the obligor denies owing the duty of support alleged in the complaint or

> offers evidence constituting a defense, the court, upon request of either party, may continue the hearing to permit evidence relative to the duty to be adduced by either party by deposition or interrogatories or by appearing in person before the court. *The court may designate the judge of the initiating court as a person before whom a deposition may be taken or interrogatories propounded.*

(Emphasis added.)

As previously noted, the sparse record before us contains neither a transcript of the hearing before the district court, nor a settled and approved statement of the evidence presented. Thus, the record does not disclose what defenses, if any, respondent asserted with respect to the amount of arrearages due. Under these circumstances, we must assume that the district court did not err by requesting additional documentation relating to the total amount of arrearages accrued as of the date of its order. *See* State ex rel. Lyon v. Lyon, 75 Nev. 495, 346 P.2d 709 (1959). Accordingly, we reject appellant's assignments of error, and we affirm the judgment of the district court in Docket No. 16581.

### *County of Yolo v. Drake, No. 17017*

On September 14, 1977, the Superior Court of Yolo County, California entered a final judgment dissolving the marriage of Judy and Robert Drake. The dissolution decree incorporated the provisions of a prior interlocutory order that awarded custody of the Drakes' minor child, Cheryl Ann, to Judy Drake. It further directed respondent Robert Drake to pay $50 per month in child support until the "child reaches the age of majority, or *further order of this court.*" (Emphasis added.)

On February 3, 1983, the district attorney of Yolo County, California, filed a RURESA complaint on behalf of the minor child in a California Superior Court. The complaint alleged that the child had been receiving $253 per month in public assistance from Yolo County, and that, as of December 31, 1982, a balance of $8,778 in public assistance was due and owing. *See, e.g.,* NRS 130.100.[2] Consequently, the complaint sought an order compelling respondent to pay support in the amount of $253 per month, "or a reasonable amount based on [respondent's] financial ability." Further, the complaint requested that respondent be directed to pay the alleged balance of $8,778 in accrued public assistance.

---

[2]NRS 130.100 provides:

> Whenever the state, or a political subdivision thereof, furnishes support to an individual obligee, it has the same right to initiate a proceeding under this chapter as the individual obligee for the purpose of securing reimbursement for support furnished or of obtaining continuing support, or both.

Thereafter, the California initiating court forwarded the complaint to the Clark County District Attorney, who instituted RURESA proceedings against respondent in the Eighth Judicial District Court. The district court then referred the matter to a special master, and subsequently entered a series of "temporary" support orders adopting the master's recommendations. The last of these "temporary" orders was filed by the district court on October 1, 1984. The order approved the master's recommendation that respondent be directed to pay $75 per month in child support.

On November 8, 1984, following this court's decision in Vix v. State of Wisconsin, 100 Nev. 495, 686 P.2d 226 (1984), respondent filed a motion to reduce his child support payments to conform to the $50 per month amount directed in the prior California divorce decree. Respondent asserted that this court's holding in *Vix* precluded the district court from entering a child support order in an amount greater than the amount provided in the prior California decree. On December 4, 1984, the master filed findings of fact, conclusions of law and a recommended order denying respondent's motion to reduce the support payments. Respondent filed timely objections to the master's findings on December 12, 1984. *See* NRCP 53(e)(2). On January 15, 1985, appellant (the County of Yolo) moved the district court for an order approving the master's findings of December 4, 1984. On June 26, 1985, the district court entered an order denying appellant's motion seeking approval of the master's findings. The district court further directed that respondent's prospective child support payments should conform to the $50 per month figure provided in the prior California divorce decree, and that respondent's "arrears if any be calculated at" $50 per month from December of 1984.[3]

Thereafter, appellant filed a timely motion in the district court for additional findings of fact. *See* NRCP 52(b). Appellant requested the court to find that respondent "has the ability to pay $75 per month in child support recommended by the Master on December 4, 1984, and that it is reasonable for him to do so." Appellant further requested the district court to find that "were this an action brought to modify the [California divorce decree] that there are sufficient changed circumstances to require a modification." On September 6, 1985, the district court entered an order refusing to make the requested additional findings of fact

---

[3]The district court also ordered that any sum paid by respondent in excess of $50 per month "after . . . respondent filed his objection to the Master's Findings . . . be credited to any arrearages which heretofore have accumulated."

relating to respondent's ability to pay child support in excess of $50 per month. The court stated that it had no jurisdiction in a RURESA hearing "to consider the increase in child support which was in excess of that previously ordered in the divorce action." This appeal followed.

Appellant contends that the district court erred in concluding that it lacked jurisdiction, in a RURESA proceeding, to increase respondent's prospective child support payments to an amount greater than that set forth in the prior decree. Appellant first contends that a reading of Nevada's RURESA provisions, in light of the entire act, compels a conclusion that the legislature intended to confer jurisdiction upon the district courts, in RURESA proceedings, to increase the amount of a support obligation imposed in a prior civil proceeding. *See* Ex Parte Prosole, 32 Nev. 378, 108 P. 630 (1910) (court should look to the entire act in construing the meaning of a particular clause). Specifically, appellant observes that NRS 130.265(2) provides in part that a RURESA court must conform its support order to the amount allowed in a prior, separate civil action "unless the court is of the opinion for good cause shown that another amount would be proper." Additionally, appellant points to NRS 130.210(2) which essentially provides that an order issued by a court of this state in a RURESA proceeding "has the same effect and is subject to the same procedures, defenses and proceedings for . . . modifying . . . any support order of this state. . . ." Appellant also cites NRS 130.030 ("purposes of [RURESA] are *to improve and extend* by reciprocal legislation the enforcement of duties of support"), and NRS 130.0411 ("duty of support" is a duty "imposed *or imposable*" by law or order). (Emphasis added.)

The construction advanced by appellant, however, ignores the legislature's amendments to NRS 130.280(1). As we previously noted, the legislature amended NRS 130.280(1) in 1981 so as to delete the language permitting a Nevada court to modify or nullify a prior order of support. In our view, this amendment to NRS 130.280(1) clearly indicates a legislative intent to prohibit the district courts of this state from modifying or nullifying a pre-existing duty of support in a RURESA proceeding. *See* Vix v. State of Wisconsin, *supra*. Moreover, the above-noted provisions of the act cited by appellant are not inconsistent with NRS 130.280(1) as amended. For example, NRS 130.265(2) can be reasonably construed to apply to the case where an obligor demonstrates to the responding court that "good cause" exists for a temporary reduction in the amount of support payments due under a prior decree. As we previously explained, such a reduc-

tion does not amount to a modification or nullification of the prior order.

The more difficult question, however, is whether a RURESA court may order an increase in the amount of support payments due under a prior decree and whether such an order modifies or nullifies the pre-existing duty of support. As discussed above, the district court, in a RURESA action, may reduce the amount of support payments awarded under a prior decree, without modifying or nullifying the prior decree, if the obligor is unable to pay the original amount. *See* Foster v. Marshman, 96 Nev. 475, 611 P.2d 197 (1980); Campbell v. Jenne, 563 P.2d 574 (Mont. 1977). We conclude, however, that the same rationale does not apply in cases where an increase over the initial amount of support is sought in a RURESA action.

Initially, we note that strong practical reasons, as well as policy considerations, mandate our conclusion in this regard. As noted, the remedies provided by RURESA are "in addition to and *not in substitution for any other remedies.*" (Emphasis added.) *See* NRS 130.050. An obligee who wishes to litigate the question of changed circumstances necessitating an increase in previously-imposed support payments may pursue other more appropriate remedies than RURESA provides. *See, e.g.,* NRS 125A.010 *et seq.* Moreover, the circumstances and the procedures employed in formal civil proceedings differ substantially from those in a RURESA proceeding. *See* Peot v. Peot, 92 Nev. 388, 390, 551 P.2d 242, 244 (1976). Under RURESA, "one seeking support . . . is not usually present in the responding state, and relies upon the prosecuting attorney of the various states in which the obligor is found." *Id.* Further, a RURESA court "is not bound by the 'changed circumstances' doctrine and is primarily concerned with the enforcement of support." *Id.* We further observe that in light of the aforementioned legislative amendment to NRS 130.280(1), it is doubtful that the legislature ever envisioned that RURESA should place upon the already overburdened prosecuting attorneys of this state the additional obligation of litigating the complex questions involved where an absent obligee seeks an increase in a prior support award on the basis of changed circumstances. Such cases, if they are to be adequately litigated and decided, require a thorough review of the facts and circumstances giving rise to the initial decree, as well as an extensive investigation and documentation of the alleged changes in those facts and circumstances. The sparse records and limited factual predicates upon which suits are initiated in summary RURESA proceedings often do not afford the prosecuting attorney an adequate evidentiary basis from which he or she can meet the requisite affirmative burden of proof. It is difficult to see how a prosecuting attorney acting on behalf of an absent obligee can fulfill his or her mandate

to litigate such a case diligently under these circumstances.[4] *See* NRS 130.190(2). In our view, the prosecuting attorneys of this state, acting on behalf of an absent obligee, should not be forced to litigate the complex issues involved where support increases are sought on the limited evidence and summary procedures contemplated by the RURESA scheme. *See, e.g.,* NRS 130.210.

Moreover, a RURESA order directing an increase in the amount of support payments due from an obligor is much more likely to effect, in practical terms, a real modification of a prior support decree than is a corresponding temporary reduction. In the case of a reduction, the difference between the greater and lesser amounts will continue to accrue in the form of arrearages due under the prior decree. In contrast, where an increase in prospective support payments has been imposed by a RURESA court on the basis of changed circumstances, it is unlikely that an obligor, in an action based on the prior decree, could recover or obtain credit for any support paid pursuant to the RURESA action which was in excess of the amount ordered in the initial decree. Accordingly, we conclude that an increase imposed in a RURESA proceeding is much more likely to effect a modification in realistic terms.

We are mindful of the contrary authorities from other jurisdictions allowing RURESA courts in those states to increase the amount of prospective support payments due under prior support decrees based upon the independent nature of RURESA proceedings. *See, e.g.,* Koon v. Boulder Cty., Dept. of Soc. Serv., 494 So.2d 1126 (Fla. 1986); Jaramillo v. Jaramillo, 618 P.2d 528 (Wash.Ct.App. 1980); Olson v. Olson, 534, S.W.2d 526 (Mo. Ct.App. 1976). We must defer, however, to the legislature's 1981 amendment to NRS 130.280(1) as a clear pronouncement of legislative intent to deny the courts of this state, in RURESA proceedings, the jurisdictional authority to increase the amount of a pre-existing duty of support. *See, e.g.,* Bushway v. Riendeau, 407 A.2d 178 (Vt. 1979) (interpreting a Vermont RURESA provision to preclude an increase); *see also* McEvily v. McEvily, 437 A.2d 1110 (Vt. 1981) (distinguishing the *Riendeau* opinion and holding that Vermont courts must be able to alter manner of payment to reflect obligor's inability to comply with pre-existing order). Nothing in this opinion, however, should be construed to preclude a district court, in a RURESA proceeding, from increas-

---

[4]We note that an equally onerous burden of proof rests upon the obligor seeking a temporary reduction in support payments on the grounds that his or her current financial status precludes payment of the full amount due. However, RURESA actions typically are litigated in jurisdictions where the obligor and his current financial records are located. Further, the obligor may engage private counsel to litigate the cause.

ing the amount of prospective support payments in order to structure a payment schedule calculated to pay off accrued arrearages under the prior decree. Accrued arrearages clearly constitute "good cause" under NRS 130.265(2) to enter a support order in an amount in excess of the periodic amounts due under a prior decree. In this regard, we observe that in future RURESA proceedings, the County of Yolo may appropriately seek an increase in respondent's monthly support payments in order to decrease accrued arrearages.[5]

Accordingly, we reject appellant's contentions and we affirm the judgment of the district court in Docket No. 17017.

GUNDERSON, C. J., STEFFEN, YOUNG, and SPRINGER, JJ., concur.

---

[5]The parties have not discussed the applicability to these appeals of those provisions of RURESA which relate to the registration of foreign support orders. See NRS 130.320 to NRS 130.370. We note that NRS 130.370(1) provides in part that a properly registered foreign support order "shall be treated in the same manner as a support order issued by a court of this state" and that "[i]t has the same effect and is subject to the same procedures, defenses and proceedings for reopening, modifying, vacating or staying as a support order of this state. . . ." Nothing in NRS 130.370(1) conflicts with the views expressed herein. The provision clearly provides that a foreign support decree, once registered here, is subject to the same res judicata effect as a support decree of this state, and it may be reopened and modified in the same manner as a support decree of this state, i.e., in a formal civil proceeding. See also NRS 17.350.