### Allison M. Scully v. Charles J. Schubert

[583 A.2d 93]

No. 89-291

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed October 19, 1990

*James P. Mongeon*, Rutland County State's Attorney, and *Susanna M. Longo*, Paralegal (On the Brief), Rutland, and *Robert W. Katims*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant.

*Judy G. Barone* of *Carroll, George & Pratt*, Rutland, for Defendant-Appellee.

**Morse, J.** This case presents the issue of whether the usual rule of appellate waiver of trial error applies when a state's attorney's office, after mishandling a URESA petition, moves for relief from judgment on an erroneous ground. We hold that due to the nature of URESA proceedings the rule that a lawyer's tactical decisions bind a client is relaxed and accordingly reverse and remand.

Allison Scully was an unmarried inn-worker in the Dorset area of Vermont when she became pregnant in September 1985. She left the state and moved to Ipswich, Massachusetts, in November 1985, and there gave birth to Emma. She later filed a URESA complaint in a Massachusetts district court, which was forwarded, along with a sworn statement of facts, to the Rutland district court. She claimed the child's father was defendant Charles Schubert, a married man, who had employed her in Dorset. Mr. Schubert responded with a motion to dismiss on grounds of nonpaternity, which was supported by an affidavit, signed and sworn to by Scully in Massachusetts on December 4, 1985. This Affidavit of Non-Paternity ("affidavit") states in part that Schubert was not and could not possibly be the father of

her then-unborn child and that she had not received money, property, or any other inducements to convince her to sign the document.

A hearing was held in Rutland district court at which Ms. Scully was represented by a Rutland County deputy state's attorney, as provided by 15 V.S.A. § 406(b). The deputy prosecutor neither contacted Ms. Scully nor moved for a continuance to investigate the truth of what was contained in the affidavit, as provided for in 15 V.S.A. § 408. Instead, he volunteered that the affidavit established that Schubert was not the father and agreed that the motion to dismiss should be granted. On this basis, the court dismissed the petition in January, 1988.

After learning of the dismissal, Ms. Scully made a second URESA complaint, which included greater documentation than the first. The Rutland County state's attorney filed this complaint in March 1988 and followed up with a motion for relief from judgment in the first URESA action, claiming that the dismissal was procured by fraud, D.C.C.R. 60(b)(3). Mr. Schubert opposed the motion and moved for dismissal of the second action on grounds of res judicata.

In considering the motions, the court found that the parties had a sexual relationship, Ms. Scully became pregnant, and at the urging of Mr. Schubert and others, she moved to Ipswich to stay with friends and have the baby. Mr. Schubert sent her money. Some time later when Ms. Scully was three months pregnant, Mr. Schubert went to Ipswich with the unsigned affidavit. Schubert told Ms. Scully that if she did not sign it, his wife, who knew about her, would move all of their jointly held assets out of his control so that he could no longer send her money. Ms. Scully was persuaded to sign the affidavit because she needed the support and trusted Mr. Schubert. Schubert stopped paying Scully support in late 1987, which prompted her to file the first URESA action.

In denying the motion for Rule 60(b) relief, the court held that Scully was in effect seeking relief from her own fraud, stating, "[Scully] signed the document for a quid pro quo, and that was that she receive money towards the support of herself and her child and for hospital expenses without resort to litigation," and "should not now be heard to complain [of it]." The court

then dismissed the second URESA complaint on grounds of res judicata.

■ On these facts, the plaintiff should not have relied on Rule 60(b)(3) to reopen the judgment. What prevented the plaintiff's claim from being fully adjudicated was not fraud, but the state's attorney's failure to talk with her, to investigate the veracity of the affidavit, or to request an opportunity as provided by 15 V.S.A. § 408 for an extension of time to allow her to present contrary evidence. The plaintiff could have relied on Rule 60(b)(6), the rule's catchall section, broadly providing relief from judgment "for any other reason justifying [it]," and, given the undisputed facts, she should have prevailed on her motion. However, she did not raise Rule 60(b)(6), relying solely on Rule 60(b)(3). Ordinarily we would not reach points not raised in the trial court and would affirm. Nevertheless, because of the unique character of URESA proceedings, we reach the merits of plaintiff's request for relief from judgment.

■ URESA provides a civil enforcement mechanism, 15 V.S.A. §§ 395–422, by which this state helps out-of-state custodial parents to collect support from those responsible to pay who live here. Amounts of support owed—while they may be vital to the custodial parents, largely women—are usually fairly small in the larger scheme, and it is often impossible or economically prohibitive for the custodial parent to travel to this state and use our courts to collect. The cost of collection often exceeds the debt. URESA seeks to remedy this problem by having agents of the state act on behalf of the person owed support. Thus, URESA has a remedial purpose and should be construed liberally to effectuate its objectives. *Bushway v. Riendeau*, 137 Vt. 455, 461, 407 A.2d 178, 181 (1979).

In the URESA scheme, the parent seeking support petitions a court in his or her home state, which passes the petition to the responding state, the home state of the other parent. Once the petition arrives in the responding state—as plaintiff's did here in Vermont—the state's attorney has an obligation to prosecute the case diligently on behalf of the petitioner. 15 V.S.A. § 406(b). The relationship between the petitioner and the state's attorney in the corresponding state is not that of a normal client and attorney. The petitioner has no say on what legal action to pur-

sue. Rather, all the duties and obligations of the attorney are provided by the statute.

Likewise, the URESA proceeding is not open ended; the petitioner is not free to decide what issues to raise. Essentially, the court is limited to determining the duty of support. The paternity issue is obviously central to the duty of support, and URESA does not contemplate a dismissal without an adjudication when the issue is raised. Rather, 15 V.S.A. § 415 provides that when a putative father denies paternity, the court may only adjudicate paternity if both parties are present or if the presence of both parties is not necessary to decide the issue. Ordinarily, the mother is not present: the law is designed to make interstate and intercounty enforcement easier by not requiring the mother to travel and be present at the hearing. If the presence of a party is necessary, the law contemplates a continuance. 15 V.S.A. §§ 408, 415. The court has the duty to determine whether the mother's presence is necessary, see *id.*, but here the determination was not made; the deputy state's attorney simply "threw in the towel" and allowed the petition to be dismissed on the merits.

■■ Ordinarily, the actions and negligence of an attorney are attributable to the client. *Haskins v. Estate of Haskins*, 113 Vt. 466, 471, 35 A.2d 662, 664–65 (1944). However, this rule has no application where an attorney acquiesces to dismissal of a case without a client's permission. A court may not "allow[ ] counsel . . . to negate . . . clients' claims without their knowledge or permission. It is a well-established rule that an attorney has no authority, without the permission of his [or her] client, to dismiss a case with prejudice or do any act that will have the effect of irrevocably renouncing or barring his [or her] client's right of action." *In re J.H.*, 144 Vt. 1, 4, 470 A.2d 1182, 1184 (1983); see also *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99, 104, 528 A.2d 1117, 1120 (1987) (citing sources for the more general proposition that an attorney has no authority to compromise or settle a client's claim without his or her permission).

■ At the hearing on plaintiff's motion for relief from judgment, Ms. Scully presented uncontroverted testimony that she had no contact with her attorney until after the first complaint

was dismissed. The court thus knew that the deputy state's attorney had dismissed the first action without any contact with Scully and therefore also knew that she had not agreed to the dismissal. On this record, the court should have granted plaintiff's motion to set aside the URESA judgment in defendant's favor, but was sidetracked by the erroneous fraud issue raised by the state's attorney.

In this case the legislative purpose in creating URESA and the potential hardship to Emma Scully—one of the supposed beneficiaries of the URESA scheme—require that ineptness in administering the URESA scheme not prevent this case from being decided on the merits of paternity.

*The order denying plaintiff's motion for relief is reversed and the matter is remanded for trial on the issue of paternity and, if found, the appropriate relief.*

**Allen, C.J.,** concurring. I concur with the result only.