## McCABE *v.* McCABE

[No. 193, October Term, 1955.]

*Decided June 15, 1956.*

Before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDER-SON and HAMMOND, JJ.

Submitted on brief by *Lewis H. Weiss, James E. Artis* and *Harvey H. Holland, Jr.,* for the appellant.

No brief and no appearance for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal presents for decision a question which has not heretofore been before this Court—whether a court of equity in Maryland will enforce here by the sanctions customarily used by equity courts a decree for alimony entered by a court of another State. The chancellor sustained the demurrer of a husband to the bill of complaint of his former wife, seeking such enforcement, and transferred the case to the law side of the court, and the wife appeals from that action.

The parties lived in Maryland and were married in Montgomery County in 1927. Two children were born to them. In 1931 the husband procured an absolute divorce in a court of Nevada. The wife appeared in the proceedings by counsel. The Nevada court ordered the husband to pay the wife $60.00 a month as permanent alimony until her death or remarriage, as well as the sum of $40.00 a month for the support of the two minor children. The wife has continued to live in Maryland, as have the children. The husband worked in several states but finally returned to Montgomery County, where he has lived since 1946. The husband has paid but $270.00

since 1931 and the wife alleges he owes $25,890.00 in accrued and unpaid alimony and support installments. The bill alleges the matters that have been recited, and that the husband has had no property subject to attachment or execution since 1931 until recently, when he has become "entitled" to a "substantial interest" in real estate in Montgomery County (presumably from the estate of his father, recently deceased), and that unless the equity court assumes jurisdiction and "* * * recognizes and enforces the said Nevada decree either by attachment of the person of the respondent, by contempt proceedings, or by some similar action solely within the powers of equity, complainant is without remedy and, to all intents and purposes, her right is unenforceable and a nullity." The bill further alleges that the courts of Nevada have power to modify decrees for the payment of alimony to accrue in the future, but no power to modify such decree for accrued or past due installments, and says that there is no pending appeal from the Nevada decree, that it has never been revoked and that the wife has not remarried. The prayers of the bill are that the court decree $25,890.00 to be now due the wife and that it adopt the Nevada decree as its own and enforce it as is customary under the laws of Maryland, and enforce by suitable decree such rights as the wife may be found to have against the husband. The demurrer to the bill was solely on the ground that there was an adequate and complete remedy at law.

It is established that where a decree is passed for alimony payable in future installments, the right to each installment becoming due is absolute and vested and protected by the Full Faith and Credit Clause of the Federal Constitution, provided the court cannot retroactively modify the decree and provided no modification of the decree has been made prior to the maturity of the installment. *Rosenberg v. Rosenberg,* 152 Md. 49; *Sistare v. Sistare,* 218 U. S. 1. The *Rosenberg Case* decided that in the absence of proof to the contrary, it would be presumed that a decree for alimony in another state is not subject to an annulment or modification as to installments which have become due so as to preclude an action at law in Maryland to recover the total of such installments,

and the bill alleges that Nevada has no power to modify past due installments, and has not attempted to do so.

It is clear then that the appellant would be entitled, upon proper proof, to secure a judgment at law for the amount due and unpaid under the Nevada decree. We must determine whether she has a right to have a court of equity énter a monetary decree for the sum so due and whether that decree can be enforced by the same processes it could be if it were a decree of a Maryland court. There is the further question whether a Maryland equity court can compel obedience to the directions of the Nevada decree to pay month by month the specified alimony.

The Courts of the country have not agreed in their answers to such questions. The trend increasingly has been to hold that equity will act in respect of a decree of a sister state for alimony as it would in respect to such a decree of its own. In *Barber v. Barber,* 62 U. S. (21 How.) 582, 16 L. Ed. 226, the wife, a citizen of New York, brought suit against her husband, a citizen of Wisconsin, on the equity side of the District Court of the United States for the District of Wisconsin, asking that the Court give the same validity in Wisconsin to a judgment for alimony as that judgment had in New York, where it was rendered. The District Court entered a decree for the wife for the accrued alimony. The Supreme Court affirmed, pointing out that this was not a suit for the allowance of alimony with which the courts of the United States had nothing to do—this had been granted by a court of competent jurisdiction. It held that in England courts of equity would interfere to compel the payment of alimony which had been decreed a wife by the ecclesiastical courts and that the reason for the exercise of equity jurisdiction in such case was equally applicable to courts of equity in the United States. It said: "The parties to a cause for a divorce and for alimony are as much bound by a decree for both, which has been given by one of our State courts having jurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such

by other courts. And such a judgment or decree, rendered in any State of the United States, the court having jurisdiction, will be carried into judgment in any other State, to have there the same binding force that it has in the State in which it was originally given. For such a purpose, both the equity courts of the United States and the same courts of the States have jurisdiction."

In *German v. German,* 188 A. 429, the Supreme Court of Connecticut, speaking through Chief Justice Maltbie, held that a New York resident could bring an equitable action to enforce a New York decree for alimony against a Connecticut resident for past due payments and the Connecticut court could give any appropriate remedy applicable to an action brought to it in its capacity as a court of equity. Other cases which have reached the same result are *Johnson v. Johnson* (S. C.), 8 S. E. 2d 351; *Thones v. Thones* (Tenn.), 203 S. W. 2d 597; *Glanton v. Renner* (Ky.), 149 S. W. 2d 748; *Shibley v. Shibley* (Wash.), 42 P. 2d 446; *Ostrander v. Ostrander* (Minn.), 252 N. W. 449; *McKeel v. McKeel* (Va.), 37 S. E. 2d 746. The general view of these courts is that the requirements of the Full Faith and Credit Clause are a minimum, not a maximum, a command to do so much and not a prohibition against doing more, and that the enforcing state may give recognition and effect to decrees of a sister state above and beyond that required by the Constitution of the United States, particularly as to the matter of remedies. Courts which have refused to give equitable enforcement to the collection of accrued and unpaid alimony reason that the amount claimed is but a debt and, as such, is entitled to be collected only in the way any other debt is collected. In some of the states that so held—New York and New Jersey for example—the Legislature has changed the result reached by their Courts. See a discussion of the earlier cases, on both sides, in the annotation in 97 A. L. R. 1197; and see also 109 A. L. R. 652; 132 A. L. R. 1272; 157 A. L. R. 170; and 18 A. L. R. 2d 862. In 1948 the American Law Institute found that it should add to the *Restatement, Conflict of Laws,* Sec. 464, *Enforcement of Foreign Decree for Alimony,* the following comment found in the 1948 Supplement (Comment d):

"If the law of the forum permits the use of equitable aid to enforce a decree for alimony, the forum will permit the use of equitable aid to enforce a judgment which it grants on the basis of a foreign decree for alimony." The Institute adds: "This Comment has been added because of the growing authority supporting the position that equitable help will be given to the holder of an alimony judgment when enforcement is sought in a second state."

This Court has held that alimony represents a duty and not a debt. It was so noted in *Safe Deposit & Trust Co. v. Robertson,* 192 Md. 653, wherein the Court permitted the invasion of a spendthrift trust to satisfy claims for alimony. In *Oles Envelope Corp. v. Oles,* 193 Md. 79, the Court said that the obligation to pay alimony is not a debt but a duty resting upon sound public policy, and added: "Hence this obligation may be enforced by attachment of the person for contempt, and the defendant may be imprisoned unless he can purge himself of the contempt by paying or by showing that he has neither the estate nor the ability to pay." Since the 1950 amendment of Art. III, Sec. 38, Constitution of Maryland, and the decision in *Zouck v. Zouck,* 204 Md. 285, obligation of support of minor children under a decree would, like alimony, be considered a duty, not a debt. The public policy of Maryland would seem clearly to permit the relief sought by the wife in this case. In 1951, the Legislature enacted the Uniform Reciprocal Enforcement of Support Act, now codified as Art. 89C of the Code. The duty of support is defined in Sec. 2 of that Article as including that imposed or imposable by law, or by any court order, decree or judgment whether or not it is incidental to a proceeding for a divorce, judicial separation, or separate maintenance, and under Sec. 15 (d) of that Article, the courts of Maryland, when it is a responding state, have the express power to "* * * punish the obligor who shall violate any order of the court to the same extent as provided by law for contempt of the court in any other suit or proceeding cognizable by the court." We held in *Commonwealth of Pa. v. Warren,* 204 Md. 467, that proceedings under Art. 89C were in equity, not in law. It is trite to note that if a husband fails to

obey a decree of an equity court of the State to pay alimony or support, he may be made to respond by any of the sanctions set forth in Code, 1951, Art. 16, Sec. 222, which includes attachment for contempt. Thus, if the wife in this case were proceeding under a domestic equity decree, or if she were residing in another state and proceeding under the Uniform Reciprocal Enforcement of Support Act against her husband who was in this State, the husband could be made to obey orders to support by sanctions available to equity. We see no reason why the same sanctions may not be made available to compel him to obey the decree of another state, particularly in a case where the marriage occurred in Maryland and both the husband and the wife are long time residents of the State.

Some of the courts that use equitable means to enforce a foreign judgment or a money decree for accrued and unpaid alimony will not treat similarly the foreign decree as their own as far as installments ordered to be paid in the future are concerned. They say that such future installments are subject to modification by the court issuing the decree and so, are not final. This view has been criticized as being narrow and unrealistic, and an increasing number of courts do not follow it, preferring as a matter of public policy to enforce foreign decrees as to future alimony by equitable means to the same extent as if the enforcing state had itself entered the decree in the first instance. *Scoles, Enforcement of Foreign "Non-Final" Alimony and Support Orders,* 53 Columbia L.R. 817, says: "Payment of future installments under an alimony or support decree can likewise be enforced under presently existing procedures by an equitable proceeding * * * resulting in a local continuing decree for alimony or support. This decree would provide the plaintiff with * * * local equitable remedies, such as bond, contempt, sequestration and receivership. Indeed, a strong argument can be made that full faith and credit is not given if a state discriminates against foreign decrees by denying the remedies given to similar decrees of its own." The proposition urged in the sentence last quoted is supported by the decision in *Summers v. Summers* (Nev.), 241 P. 2d 1097. See also

*Barber v. Barber,* 323 U. S. 77, 89 L. Ed. 82, particularly the concurring opinion of Mr. Justice Jackson. Generally, however, the states offering local equitable enforcement as to future payments do so on the ground of comity or the public policy of the state. For example, in *McKeel v. McKeel* (Va.), 37 S. E. 2d 746, *supra,* which is cited in the *Restatement, Conflict of Laws,* 1948 Supp., Sec. 464 (Comment d), referred to above, the Virginia Court said: "But even though the courts of Virginia may not be compelled to do so under the full faith and credit clause of the Federal Constitution, upon principles of comity they may establish as their own decree a foreign decree for future payments of alimony, with the same force and effect as if it had been entered in Virginia, provided, of course, the foreign decree violates no public policy of Virginia." The Court concluded: "* * * a decree for alimony and support money, granted by a foreign court, may be established and enforced by and through the equity courts of this State, with the incidental power of enforcement of such a decree by attachment for contempt." The same result has been reached in a number of other States. *Fanchier v. Gammill* (Miss.), 114 So. 813 (enforcing a decree for alimony rendered in Nevada); this case has been frequently cited in subsequent decisions such as *Ostrander v. Ostrander* (Minn.), 252 N. W. 449, *supra; Shibley v. Shibley* (Wash.), 42 P. 2d 446, *supra.* See also *Cousineau v. Cousineau* (Ore.), 63 P. 2d 897; *Sackler v. Sackler* (Fla.), 47 So. 2d 292; *Johnson v. Johnson* (S. C.), 8 S. E. 2d 351, *supra; Johnson v. Johnson* (S. C.), 13 S. E. 2d 593; *Biewend v. Biewend* (Supreme Ct. of Calif.), 109 P. 2d 701; *Picker v. Vollenhover* (Ore.), 290 P. 2d 789; and *Worthley v. Worthley* (Supreme Ct. of Calif.), 283 P. 2d 19. In the case last cited the Supreme Court of California noted, as have some other courts, that it would be anomalous to proceed to enforce orders for future support under the Uniform Reciprocal Enforcement of Support Act and not to do it in other proceedings, and said: "In Biewend v. Biewend * * * it was held that the California courts will recognize and give prospective enforcement to a foreign alimony decree, even though it is subject to modification under

the law of the state where it was originally rendered, by establishing it 'as the decree of the California court with the same force and effect as if it had been entered in this state, including punishment for contempt if the defendant fails to comply.' Similar holdings in reference to both alimony and support decrees have repeatedly been made by the District Courts of Appeal, see the cases cited in Biewend v. Biewend, supra * * *." Judge Niles reached the same conclusion in the case of *Knight v. Knight* in the Circuit Court No. 2 of Baltimore City, his comprehensive opinion being reported in The Daily Record of April 14, 1950.

The enforcement of foreign decrees for alimony payable in the future often gives rise to questions as to how and to what extent the husband may offer defenses and the problem of modification of the decree, either in the original state or in the forum enforcing the decree. The courts have handled this in various ways. For example, in the Oregon case of *Cousineau v. Cousineau, supra,* the Court said that when the original decree is modified in the original state, the enforcing decree upon proper proceedings would be modified in the enforcing state. In the second *Johnson v. Johnson* case, 13 S. E. 2d 593, *supra,* the Supreme Court of South Carolina said that the defendant might show inability to pay and be relieved of contempt and that this did not amount to modification of the decree in Florida, which occupied no higher position than a domestic judgment. In *Biewend v. Biewend,* 109 P. 2d 701, 705, *supra,* it was held that the Missouri decree would be established as the decree of California "* * * until such time as the Missouri court modifies its decree." In the subsequent case of *Worthley v. Worthley, supra,* the Supreme Court of California said: "On reconsideration we have concluded, for reasons that appear below, that this statement was erroneous insofar as it implied that the California courts will not try the issue of modification on its merits, and that the courts of this state should undertake to try such issues." See also *Griffin v. Griffin,* 327 U. S. 220; and *New York ex rel. Halvey v. Halvey,* 330 U. S. 610, 614.

We need not and do not decide now the answer to the various problems that may arise in the enforcement in equity

of foreign decrees for alimony and support. We decide only that in Maryland an equity court can enforce a decree of another state, both as to alimony accrued and to accrue, and may use for its enforcement the same equitable remedies and sanctions it could use to enforce a decree it had duly entered in the first instance, even as the Legislature has said it may use such remedies and sanctions to enforce orders of support under the Uniform Reciprocal Enforcement of Support Act, Code, 1951, Art. 89C, Sections 13 and 15.

For the reasons indicated, we think that the chancellor erred in sustaining the demurrer to the bill of complaint and in transferring the case to the law side of the court. The allegations in the bill stated a good cause of action in equity. The wife should be given an opportunity to prove them, and if she does so, be afforded appropriate relief.

*Order reversed, with costs,*
*and case remanded.*