## JOHN MacMILLIAN BARRELL v.
## JOANNA LEE BARRELL

[No. 99, September Term, 1979.]

*Decided June 12, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*John D. Alexander, Jr.,* with whom were *Leslie D. Gradet* and *Allen, Thieblot & Alexander* on the brief, for appellant.

*Claude L. Callegary* and *Joan Leese Lowes,* with whom were *Callegary & Callegary* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

The Maryland version of the Uniform Reciprocal Enforcement of Support Act is Md. Code (1957, 1979 Repl. Vol.), Art. 89C (hereinafter "URESA"). Sections 31 through

39 inclusive of URESA comprise the subtitle, "Registration of Foreign Support Orders." In *Barrell v. Barrell,* 43 Md. App. 298, 405 A.2d 324 (1979) the Court of Special Appeals held that the registration provisions of URESA were not the exclusive means of initiating in this state the enforcement of a foreign alimony decree. We granted certiorari to review that decision and shall affirm.

The Superior Court for the County of Clayton, State of Georgia, had granted the appellant, John MacMillian Barrell, a "total" divorce from the appellee, Joanna Lee Barrell, on April 27, 1972. The Georgia decree awarded appellee alimony. On February 21, 1978 appellee filed in the Circuit Court of Baltimore City her "Bill of Complaint to Declare Foreign Decree Valid and to Enroll a Foreign Decree." The bill of complaint was not verified. Nor was there attached to it a certified copy of the Georgia decree. Arrearages of alimony totalling $29,400 as of the date of filing were alleged. The bill of complaint prayed that the trial court adopt the Georgia decree "as its own, and enroll said Decree of Divorce in the records" of the trial court; that judgment be entered against the appellant for $29,400 "or for such amount in excess thereof as may be due on the date of judgment;" that appellant "be ordered to make prompt payment in the future of all amounts required . . . under the provisions of the Decree of Divorce;" that appellant be required to pay reasonable attorney's fees; and that the appellee have other and further relief. Appellant, a resident of Georgia, was personally served in Maryland. The trial court granted appellant's preliminary motion raising jurisdictional objections. The Court of Special Appeals reversed and remanded for further proceedings.

To present appellant's argument requires a brief review of the legal background. A Uniform Reciprocal Enforcement of Support Act was promulgated in 1950 by the National Conference of Commissioners on Uniform State Laws. That 1950 version was the basis for Ch. 301 of the 1951 Maryland Laws. The statute, Maryland Code (1951), Art. 89C, title, "Support of Dependents," was divided into three subtitles, "General Provisions" (§§ 1-4), "Criminal Enforcement"

(§§ 5 and 6), and "Civil Enforcement" (§§ 7-21). The procedure for civil enforcement involved the filing of a petition by the person entitled to support with a designated court in the initiating state. If that court determined that the respondent owed a duty of support, certain papers were then transmitted to a court in the responding state which might obtain jurisdiction of the person or property of the obligor and enforcement was effected in the responding state. The 1951 Maryland enactment did not include a separate section, common to uniform laws, relative to uniformity of construction.

In 1956 *McCabe v. McCabe,* 210 Md. 308, 123 A.2d 447, was decided. Judge Hammond, writing for the Court, stated the holding.

> We decide only that in Maryland an equity court can enforce a decree of another state, both as to alimony accrued and to accrue, and may use for its enforcement the same equitable remedies and sanctions it could use to enforce a decree it had duly entered in the first instance, even as the Legislature has said it may use such remedies and sanctions to enforce orders of support under the Uniform Reciprocal Enforcement of Support Act, Code, 1951, Art. 89C, Sections 13 and 15. [*Id.* at 318, 123 A.2d at 452.]

The quotation was preceded by the statement that "[w]e need not and do not decide now the answer to the various problems that may arise in the enforcement in equity of foreign decrees for alimony and support." *Id.* at 317-18, 123 A.2d at 452.

In 1958 the National Conference of Commissioners on Uniform State Laws proposed a new Part IV to the Act. The new sections "provide for the registration in the courts of one state of support orders issued by the courts of another state" and "[t]he support order, so registered, has the same effect and may be enforced as if it had been originally issued by a court of the registering state." *Handbook of the National Conference of Commissioners on Uniform State Laws* 242

(1958). Maryland adopted these additional sections as a new subtitle of Art. 89C, "Registration of Foreign Support Orders" by Ch. 295 of the 1965 Maryland Laws, now Code (1957, 1979 Repl. Vol.), Art. 89C, §§ 31-33 and §§ 34-36. Chapter 295 of the Acts of 1965 also added, as part of the "registration" subtitle, § 38 which provides that "[t]his article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Appellant sees the 1965 adoption of the "registration" subtitle as the legislative response to some of the "various problems" foreseen in *McCabe.* Appellant argues that the effect of the 1965 amendments is that an action initiated in Maryland to enforce a foreign support order may proceed only by way of the registration provisions of URESA so that a complaint, like appellee's, which invokes general equity jurisdiction in an action of the type recognized in *McCabe,* is no longer an available procedure. We reject appellant's premise. Thereby, it is unnecessary to express an opinion on appellant's further contentions that the absence of a verified complaint accompanied by a certified copy of the foreign decree negates the writ of summons and defeats *in personam* jurisdiction.

We think that § 3 of Art. 89C presents an insuperable hurdle to appellant. That general provision of the Article states that the "remedies herein provided are in addition to and not in substitution for any other remedies." While it is true, as appellant points out, that § 3 came into the statute in 1951 when the civil enforcement (initiating state-responding state) provisions were adopted, § 3 was not modified in 1965 when the "registration" subtitle was added. Section 3 continues to be a general provision applicable to the entire Article. Absent express language in the "registration" subtitle which would support the exclusive procedural effect which appellant seeks, the declaration of § 3 that the remedies of Art. 89C are not in substitution for any other remedies must prevail. Cumulation of remedies is likewise consistent with the purposes declared in § 1 of Art. 89C, one of which is "to improve and extend by reciprocal legislation the enforcement of duties of support . . . ."

Appellant points to the uniformity provision in § 38 of Art. 89C and argues that it can only be fulfilled, with respect to an action initiated in this state on a foreign support order, by requiring that the registration route exclusively be utilized. In our view, such an interpretation of the Act will produce a lack of uniformity. The Supreme Court of Virginia in 1979 concluded that Virginia courts were under a duty to recognize and enforce a Maryland alimony decree, in a suit on the decree, because the result was consistent with the registration provisions of the Revised Uniform Reciprocal Enforcement of Support Act,[1] Virginia Code, §§ 20-88.12, *et seq. Alig v. Alig,* 220 Va. 80, 84, 255 S.E.2d 494, 497 (1979). The Supreme Court of Minnesota affirmed a judgment based on an Idaho judgment for arrearages in support payments in *Haas v. Haas,* 282 Minn. 420, 165 N.W.2d 240 (1969). An argument that the available relief was limited to the provisions of the Minnesota URESA was rejected based on the same language found in Maryland Code, Art. 89C, § 3, *i.e.,* the statutory remedies are additional to other remedies. To the same effect are *Zelek v. Brosseau,* 47 N.J. Super. 521, 533, 136 A.2d 416, 422-23 (App. Div. 1957), *aff'd,* 26 N.J. 501, 141 A.2d 17 (1958) (action on Vermont judgment for arrearages), and *Helgesson v. Helgesson,* 196 F. Supp. 42 (D. Mass.), *aff'd,* 295 F.2d 37 (1st Cir. 1961) (action on California divorce decree awarding alimony). *See also Hudson v. Hudson,* 569 P.2d 521 (Okla. Ct. App. 1976) (remedies at common law, under URESA and under the Uniform Enforcement of Foreign Judgments Act [2] are cumulative). *Cf. Abb v. Crossfield,* 23 Md. App. 232, 326 A.2d 234 (1974) holding that a URESA proceeding initiated in the District of Columbia was not precluded by the availability in Maryland of an equity action to enforce the support provisions of the Nevada decree there involved.

The effect of URESA on other remedies is, we believe, well stated in W. Brockelbank, *Interstate Enforcement of Family Support* (1960). The author notes that the remedies of the

---

1. The Revised Uniform Reciprocal Enforcement of Support Act was promulgated in 1968. 9A Uniform Laws Annotated 643 (1979).

2. Maryland has not adopted any version of this uniform act.

registration part are in addition to other remedies in the uniform act (see Art. 89C, § 31) and that the Part III ("Civil Enforcement" subtitle) remedies are, in turn, in addition to other remedies. *Id.* at 72. He describes the relationships of the uniform act to remedies lying outside the statute as follows:

> Section 3, providing that the remedies herein provided are in addition to and not in substitution for any other remedies, is important because it leaves in force not only the remedies traditionally employed by the state to solve the problems of the abandonment of dependents when all the parties are still within one state but also some that may be employed when they are not . . . . This section also means that the Uniform Enforcement of Foreign Judgments Act may be applied wherever possible. The foreign judgments to which that act is applicable are those entitled to full faith and credit. Under the traditional view only those which have been reduced to a final judgment no longer subject to modification are so entitled. However, the trend is in the opposite direction; and today more and more states are enforcing foreign support orders, though not compelled to do so by the full faith and credit clause.[3] All this law is preserved for use by Section 3, and its possible application to any given situation should be canvassed before action under the Uniform Reciprocal Enforcement of Support Act is taken. [*Id.* at 11-12 (Footnotes omitted)].

For these reasons, we affirm.

> *Judgment affirmed; appellant to pay the costs.*

---

**3.** Citing, *inter alia,* McCabe v. McCabe, *supra.*