# Marilyn Cavallari v. Kingsley Martin

[732 A.2d 739]

No. 97-278

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 7, 1999

*Marilyn Cavallari*, Pro Se, Cambridge, New York, Plaintiff-Appellee.

*Adele V. Pastor* of *Corsones & Corsones*, Rutland, for Defendant-Appellant.

**Dooley, J.** The simple question raised by this case requires the Court to confront the legal jigsaw puzzle of state and federal statutes applicable to the interstate enforcement of child support orders. At issue is a decree, originally entered by a New York court pursuant to that state's law, allocating parental rights and responsibilities between a father and a mother who each subsequently moved to Vermont. Although the decree is silent on the issue, New York law requires the noncustodial parent to pay child support until the child's twenty-first birthday. We must decide whether our family court was required to apply Vermont law and therefore to modify the decree to terminate the support obligation when the child turned eighteen. We hold that it was, and therefore reverse the judgment of the family court, but stress that subsequent statutory amendments would yield a different result in a modification request first presented to the family court today.

The relevant facts are not in dispute.[1] The parties never married but had one child, born in 1978 when they were residents of New

---

[1] Father has moved to strike portions of mother's brief on the ground that it makes certain factual allegations that are not contained in the record of the proceedings in the family court. Because none of the allegations to which father objects are relevant to the disposition of his appeal, we deny his motion as moot.

York. In the same year, a New York court entered an order establishing a child support obligation for father as the noncustodial parent. The order does not specify the duration of the support obligation. Shortly after the order issued, mother and child moved to Pennsylvania. In 1990, a New York court modified the order to increase father's payments. At that time, father still resided in New York. Several years later, however, he moved to Vermont. The child turned eighteen on January 22, 1996 and graduated from high school on June 6, 1996. On June 12, 1996, father petitioned the Bennington Family Court to modify the 1990 New York order.[2] He alleged that mother and child were then also residing in Vermont and, therefore, that the court should apply Vermont law to determine that his duty to support his minor child had ended because by then she had turned eighteen and had graduated from high school. See 15 V.S.A. § 658(c) (providing that court "may order support to be continued until the child attains the age of majority or terminates secondary education whichever is later"); 1 V.S.A. § 173 (fixing age of majority at eighteen). Father contended that, although New York law obligated him to support his child until she was twenty-one, Vermont's earlier age of majority applied.

After a hearing, a family court magistrate found that mother and child were residents of Vermont at the time father's motion was filed and at the time of the hearing. The magistrate concluded that Vermont law applied because the forum state "need not accede to the judgment of a sister state concerning a continuing matter that has become a purely internal affair." Accordingly, the magistrate terminated father's support obligation. Mother appealed to the family court.

The family court adopted the magistrate's factual determinations but reached the opposite result. The court reasoned that a "real, substantial and unanticipated change of circumstances," as required for modification of a support obligation pursuant to 15 V.S.A. § 660(a), is not established simply because a new jurisdiction with a different law governing duration of child support orders has acquired personal jurisdiction over the parties to the decree. Thus, although the family court agreed that the parties were subject to the laws of Vermont generally, the court determined that it was without authority

---

[2] Although the petition was dated May 9, 1996, father delayed filing it until after the child graduated from high school.

to modify the support obligation because father failed to meet the specific jurisdictional prerequisite.[3] Father appeals.

The family court's rationale, while having the virtue of avoiding a difficult choice-of-law problem, is inconsistent with applicable precedent. In *Beaudry v. Beaudry*, 132 Vt. 53, 312 A.2d 922 (1973), a case that arose soon after the Legislature lowered the age of majority from twenty-one to eighteen, this Court considered the validity of a child support order that modified a 1959 decree requiring the father of three children to pay child support of $35 per week during the minority of the children. The new superior court order, entered in light of the lowered age of majority, limited father's obligation to the period before the eighteenth birthday of the children. Wife argued on appeal that the order could not be modified solely because the age of majority had changed. We rejected this argument:

> In this state a divorce decree for alimony or other annual allowance for the wife or children is not a final judgment. After the entry of the original decree, the Court has the power under 15 V.S.A. § 292 to make, modify or revise its orders concerning the custody and support of minor children. Circumstantial changes in the situation of either party, affecting either the necessity and amount of support or the ability, improved or handicapped to provide it, may be properly brought to the attention of the court by a petition to modify at any time during the minority of the children. Judgments as to the support and maintenance of minor children are necessarily provisional and temporary; in no sense are they a final adjudication of the rights and duties of parent and child. No rights, therefore, vested by virtue of the 1959 order and no rights were divested by virtue of the 1973 order.

> The status of the Beaudry children is defined not by the decretal order of 1959, but by the terms of 1 V.S.A. § 173. They will attain their majority at the age of eighteen, and the court is without proper power to order provision for their support, including education, beyond that age.

---

[3] The family court also questioned whether the magistrate had determined domicile at the correct point in time, and would have remanded for a clarification if it had not decided that the change of domicile could not be a ground for modification. As we address at the end of this opinion, we believe the court's characterization of the magistrate's determination was erroneous.

*Id.* at 57-58, 312 A.2d at 925 (citations omitted); see also *Forte v. Forte*, 143 Vt. 518, 520-21, 468 A.2d 561, 562 (1983) (error to enforce pre-1971 support order beyond new age of majority).[4]

■ The ground for modification in this case is exactly the same as that present in *Beaudry* — a new age of majority is effective, and the court must apply this age to the preexisting support order. Indeed, as *Beaudry* holds, the family court has no jurisdiction to enforce a child support order against defendant beyond the eighteenth birthday of the child or the child's graduation from secondary school. Since Vermont law requires the result requested by father, we are forced to confront the issue avoided by the family court and decide whether the choice-of-law principles set forth in the applicable statutes governing interstate enforcement of support obligations requires that New York law govern this case.

We begin our choice-of-law inquiry by noting that, as far as we can determine, every court that has faced the situation before us has modified the preexisting support order to reflect the duration-of-support rule of the forum state, the new state of residency of the parties. See *Finney v. Eagly*, 568 So. 2d 816, 819 (Ala. Ct. App. 1990); *Elkins v. James*, 842 S.W.2d 58, 62 (Ark. Ct. App. 1992); *In re Marriage of McCabe*, 819 P.2d 1116, 1120 (Colo. Ct. App. 1991); *Hodges v. Hodges*, 415 N.W.2d 62, 68 (Minn. Ct. App. 1987); *Lewis v. Roskin*, 895 S.W.2d 190, 197 (Mo. Ct. App. 1995). In some cases, the modification extends the duration to twenty-two years, the rule in the forum state. See *Lewis*, 895 S.W.2d at 197. In others, it reduces the duration to eighteen years, the rule in the forum state. See *Elkins*, 842 S.W.2d at 62.

To reinforce the availability of modification when the parties move to a state with a different durational rule, the New York courts have held that a foreign support order that terminates on the eighteenth birthday of the child must be modified to reflect New York's twenty-one year duration when the parties move to New York. See *Ryan v. Ryan*, 513 N.Y.S.2d 25, 25-26 (App. Div. 1987). Thus, if the situation had been reversed, and parties governed by a Vermont support order moved to New York, the New York courts would have routinely

---

[4] The Court reached a different result in a case involving a preexisting order that was based on a stipulation explicitly continuing child support until the child reached twenty-one years of age. See *Burke v. Burke*, 134 Vt. 400, 401, 360 A.2d 574, 575 (1976). Although we do not know whether the New York order in this case was based on a stipulation, we do know that it did not specify the duration of father's obligation to pay support. Thus, the *Burke* situation is not present here.

modified that order so that it continued until the child reached twenty-one years of age. It would be incongruous to hold that Vermont courts may not take equivalent action.

We are aware, of course, that Article IV, § 1 of the United States Constitution requires the courts of each state to accord full faith and credit to judicial proceedings of other states. We also acknowledge that, in appropriate circumstances, principles of comity can provide an additional basis for nonintervention by a Vermont court in a dispute that has already come before some other forum. The case law from other jurisdictions, however, illustrates why neither comity nor constitutional principles of full faith and credit required the family court to stay its hand here. As the California Supreme Court has stressed, after reviewing the applicable full-faith-and-credit jurisprudence, "the federal system now espouses the principle that no state may freeze the obligations flowing from the continuing relationship of parent and child." *Elkind v. Byck*, 439 P.2d 316, 320 (Cal. 1968). When the parties, including the child, all move to this state, Vermont's courts are responsible for the welfare of the child, and New York no longer has a legitimate interest in the relationship. See *Thompson v. Thompson*, 645 S.W.2d 79, 88 (Mo. Ct. App. 1982). The duration of child support "become[s] an internal affair of this state." *Elkins*, 842 S.W.2d at 62. We must honor the Vermont Legislature's decision that a child support obligation may not continue beyond the eighteenth birthday of the child or the child's graduation from secondary school.

The next question we confront is whether the Legislature has in any sense qualified that choice by virtue of the statutes it has enacted in the area of interstate enforcement of child-support obligations. The Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 15 V.S.A. §§ 385-428, repealed by 1997, No. 11, § 3, was effective when the daughter graduated from high school, and when the family court ruled. RURESA is not applicable for two reasons. First, the statute covers only situations in which the child support obligor and obligee are in different states, or in different counties of the same state. See *Bushway v. Riendeau*, 137 Vt. 455, 462, 407 A.2d 178, 181 (1979); 15 V.S.A. § 421 (explicitly providing that RURESA applies within Vermont only where obligor and obligee are in different counties). Where, as here, the parties reside in the same county, RURESA does not apply. See *Gonzales v. District Court*, 629 P.2d 1074, 1076 n.2 (Colo. 1981) (identical language in

Colorado RURESA does not apply where obligor and obligee are residents of same county of same state).

■ Secondly, the choice-of-law rule created by RURESA is not an impediment to modifying the duration of the support order at issue here. Section 395 provides that "[d]uties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought." 15 V.S.A. § 395. For the daughter's post-graduate period, the period for which the duty of support is in issue, the father-obligor was present in Vermont, and Vermont law terminates father's duty on his daughter's graduation. See *Jennings v. DeBussy*, 707 A.2d 44, 46 (Del. Fam. Ct. 1997) (under RURESA, court would not register Massachusetts order that extended child support until child reached twenty-three years of age because obligor lived in Delaware and Delaware law terminates child support at eighteen); *Pieper v. Pieper*, 368 S.E.2d 422, 424 (N.C. Ct. App.), *aff'd*, 374 S.E.2d 275, 276 (N.C. 1988) (out-of-state order providing support until child reaches twenty-two years of age can not be enforced under RURESA beyond age eighteen cut-off applicable under North Carolina law). The RURESA provision on a foreign support order registered in Vermont, 15 V.S.A. § 428(a), is not to the contrary. In any event, it is inapplicable where, as here, the obligee never registered the support order in Vermont.

As of January 1, 1998, RURESA has been replaced by Uniform Interstate Family Support Act (UIFSA). See 1997, No. 11, § 3. Unlike RURESA, the new uniform statute does have general intrastate applicability.[5] 15B V.S.A. § 613 governs when a Vermont court may modify a child support order from another state if the parties to that order now live in Vermont. Generally, the Vermont court may modify the order, see 15B V.S.A. § 613(a), but certain of the substantive

---

[5] The original version of UIFSA, adopted by the National Conference of Commissioners of Uniform State Laws in 1992, applied only to interstate child support enforcement cases. The official comment to the section on modifying child support orders issued in another state speaks to the exact issue before us:

> Finally, note that if the parties have left the issuing state and now reside in the same state, this section is not applicable. Such a fact situation does not present an interstate matter and UIFSA does not apply.

15B V.S.A. § 613 cmt. (Supp. 1999).

In the 1996 version, the commissioners added § 613 to extend the jurisdiction of UIFSA where the parties are in one state, but the dispute is about a foreign support order. The comment to new § 613 states that the section was added to change the law from that stated in the above-quoted comment. See *id.*

restrictions of UIFSA apply to that modification decision. For our purposes, the important applicable restriction is contained in § 611(c). That section provides that the Vermont court "may not modify any aspect of a child support order that may not be modified under the law of the issuing state." 15B V.S.A. § 611(c). Because a New York court could not modify the order before us to reduce its duration to the eighteenth birthday of the child, a Vermont court could not make that modification under § 611(c). See *Welsher v. Rager*, 491 S.E.2d 661, 664 (N.C. Ct. App. 1997); *In re Marriage of Cooney*, 946 P.2d 305, 307 (Ore. Ct. App. 1997).[6]

There can be, however, no serious claim that UIFSA applies to this case. Defendant filed his motion to modify in 1996. His daughter graduated from high school on June 6, 1996, having reached eighteen years of age in January of that year. Under Vermont law, defendant's obligation to pay child support would have ended on the date of graduation. See 15 V.S.A. § 658(c) (child support may be ordered until child attains the age of majority, or terminates secondary education, whichever is later).

■■ UIFSA was effective on January 1, 1998, see 1997, No. 11, § 5, and there is no indication that the Legislature intended that it operate retroactively.[7] Indeed, the Legislature's decision in 1997 to keep RURESA in effect until January 1, 1998 is strong evidence that the Legislature intended interstate support enforcement matters to remain governed by RURESA until that date. Cf. *Cowan*, 903 S.W.2d at 121 (citing Texas legislature's opposite decision as evidence of

---

[6]*Welsher* and *Cooney* both involve interstate child support disputes. In *Welsher*, the obligor moved to North Carolina, where child support orders extend only until the child reaches eighteen years, and the obligee remained in New York, where they extend to twenty-one years. In *Cooney*, the support order was issued in Nevada, where support orders extend only until eighteen years, and the obligor and obligee had moved to different states, Oregon and Tennessee. The obligee sought the advantage of Oregon's law that child support obligations extend until the child reaches twenty-one years. After the 1996 amendments to UIFSA, their holdings would be equally applicable to the purely intrastate dispute before us.

[7]Some courts have held that UIFSA operates retrospectively to govern proceedings begun under RURESA. See, e.g., *Child Support Enforcement Div. of Alaska v. Brenckle*, 675 N.E.2d 390, 393 (Mass. 1997); *Welsher*, 491 S.E.2d at 664-65; *Cowan v. Moreno*, 903 S.W.2d 119, 121 (Tex. App. 1995). As the Massachusetts court noted, none of the obligor's "substantive rights" are impaired by that holding because the court is only applying a new procedural framework to preexisting substantive rights. See *Brenckle*, 675 N.E.2d at 393. This is a different type of retrospective application than the one we would have to apply in this case. Here, there is no preexisting RURESA proceeding, and RURESA does not apply. Applying UIFSA retroactively would deny a substantive right to modification that previously existed.

intent to apply UIFSA to all pending proceedings). Under 1 V.S.A. § 213, pending suits are unaffected by new legislative acts except "acts regulating practice in court, relating to the competency of witnesses or to amendments of process or pleadings." A decision whether a foreign divorce order may be modified is one of substantive law and not within the very limited exceptions of § 213. Therefore, the enactment of UIFSA cannot affect the outcome of this case. See *Deltoro v. McMullen*, 471 S.E.2d 742, 745 (S.C. Ct. App. 1996) (reaching same result based on savings clause specifically appended to legislation enacting UIFSA).

UIFSA has a federal counterpart, the Full Faith and Credit for Child Support Orders Act (Full Faith and Credit Act), 28 U.S.C. § 1738B, and we must also therefore consider whether the federal legislation in any way alters the outcome under Vermont law. The purpose of the Full Faith and Credit Act is "ensuring that child support orders, although modifiable in some circumstances by the courts of the issuing state, receive full faith and credit in sister states." *State ex rel. George v. Bray*, 503 S.E.2d 686, 689 (N.C. Ct. App. 1998). UIFSA and the Full Faith and Credit Act are for the most part "complementary or duplicative and not contradictory." *Id.* To the extent it applies, the Full Faith and Credit Act preempts any inconsistent provisions of state law. See *Wilkie v. Silva*, 685 A.2d 1239, 1241 (N.H. 1996).

There are two provisions of the federal statute that are particularly relevant here. First, § 1738B(h) establishes choice-of-law rules for child support orders, specifying that "[i]n interpreting a child support order *including the duration of current payments* and other obligations of support, a court shall apply the law of the State of the court that issued the order." 28 U.S.C. § 1738B(h)(2) (emphasis added). This requires us to view the order as if it explicitly provided that the payment obligation continues until the child reaches twenty-one years of age because a New York court would have to enforce it for that duration. This rule does no more than make explicit what was formerly implicit. In this case, defendant made a motion to modify the New York order even though it had no stated duration. In *Beaudry* and the various comparable out-of-state cases cited above, the courts recognized that they had to modify the preexisting support order whether or not its duration was explicit.

The second relevant provision is the one governing modification of child support orders of another state:

(e) **Authority to modify orders.** — A court of a State may modify a child support order issued by a court of another State if —

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent

. . . .

28 U.S.C. § 1738B(e). Here the prerequisites to modification are present. The Vermont family court has jurisdiction over the parties. New York courts no longer have continuing exclusive jurisdiction because neither the parties nor the child reside in that state. The Vermont court could modify the New York order to shorten its duration to the later of the child's eighteenth birthday or the child's graduation from secondary school. See *Lewis v. Lewis*, 1997 WL 128566, at *6 (Ohio Ct. App. 1997) (so applying § 1738B(e) in similar circumstances).

Although the provisions of the Full Faith and Credit Act often duplicate those of UIFSA, the federal statute lacks a prohibition on modifying a provision of a support order that is nonmodifiable in the issuing state. Thus, the Full Faith and Credit Act is not an impediment to the modification sought in this case.

Because the Full Faith and Credit Act is a relatively recent enactment, there are only a few decisions interpreting its provisions. The case most comparable to this one is *Kelly v. Otte*, 474 S.E.2d 131 (N.C. Ct. App. 1996), where parties who were subject to a New Jersey divorce decree and their children all moved to North Carolina. Pursuant to an underlying agreement, the child support provision of the order contained an escalation clause that called for an annual adjustment in accordance with the consumer price index. When the obligee sought to enforce the order because of the obligor's nonpayment, the obligor challenged the escalation clause under North Carolina law, and the trial court agreed it was void under the forum law. The Court of Appeals agreed that the Full Faith and Credit Act allowed the modification because the trial court had jurisdiction over the parties and because the parties and their children had left the issuing state. See *id.* at 135. Since North Carolina law considered

such escalation clauses to be void, it was proper to modify the New Jersey order prospectively to strike the clause. See *id.* at 136.

As held in *Kelly*, the Full Faith and Credit Act presents no barrier to modification of the New York order. RURESA is not applicable by its terms and its successor, UIFSA, has no effect on this proceeding. Therefore, as expressed in *Beaudry*, the family court is without power to order father to pay post-majority child support and must modify the inconsistent order.

Finally, we address the point made in the dissent that the family court has the power to modify the New York order under the Full Faith and Credit Act only if mother and child were residents of Vermont *on the date of the modification hearing* and the magistrate failed to find residency on that date. The dissent notes that the family court could not determine whether the magistrate found residency on that date. The dissent characterizes mother's presence in Vermont as "between states of residency" and argues the decision is based on "a mere fortuitous event," that is, mother's presence in Vermont on the day she was served.

These characterizations are not an accurate description of either the undisputed facts or the magistrate's findings. The only real issue before the magistrate was whether mother and the child were residents of Vermont. The magistrate noted that both the father and mother had been residents of Vermont for about two years when mother was served at her home in Dorset, Vermont, with the motion to modify. It was undisputed that mother and the child were residents of Vermont on the date of the child's graduation from high school, the filing of the petition to modify and the service of the petition. Mother argued, however, that she had moved back to New York before the motion hearing, which occurred on October 9, 1996. After considering all of mother's contacts with Vermont and New York, and making extensive findings on those contacts, the magistrate found that *on the date of the hearing* mother "is a resident of the State of Vermont." The magistrate was most influenced by the facts that mother maintained two businesses in Vermont, a ballet school and home decorating company, and the child retained a college scholarship based on residency in Vermont.

We therefore do not need to address the dissent's argument that the federal law allows modification only when both parents are residents of this state on the date of the hearing. The magistrate found such residency, and because the findings are not clearly erroneous, and the conclusions are supported by the findings, we

must accept the magistrate's determination. See *Tetreault v. Coon*, 167 Vt. 396, 399-400, 708 A.2d 571, 574 (1998).

*Reversed.*

**Morse, J.,** dissenting. This is an odd case. The child, Demetria, for whose benefit child support was provided by a New York court, has scant connections to Vermont.

While the magistrate concluded that Vermont was plaintiff's residence because she resided here when the motion to modify was filed, the family court stated in its opinion:

> This conclusion is clearly supported as it applies to the Magistrate's determination of residency when the Petition to Modify was filed. However, under the Full Faith and Credit for Child Support Orders Act, 18 U.S.C. 1738B, analyzed by the Magistrate, Vermont would have had no jurisdiction to modify the New York order unless it could have been found *at the time of the hearing* that neither parent, nor the child, continued to be a New York resident. It is not clear from her order whether the Magistrate made such a finding, especially since she determined that, at the time of the hearing, Appellant was living in New York, had obtained a New York driver's license, had registered her car there and had registered to vote there. Furthermore, the child was in New York attending college. A remand for a clarification of the findings would be warranted, except for the Court's conclusion that, even assuming Vermont had jurisdiction to consider a petition to modify, no sufficient showing to justify modification has been made.

Even if we were to conclude that the family court was mistaken on the law,* this record hardly supports a conclusion that New York was "no longer . . . the child's State or the residence of any individual contestant." 28 U.S.C. § 1738B(e)(2)(A).

Plaintiff lived a rather nomadic life moving to a house to redecorate it and, once the job was finished, moving on to another. Plaintiff had moved from New York to Massachusetts, back to New York, then to Georgia, then to Vermont, and finally back to New York. Demetria

---

*I wish to point out that the wholly intrastate application of *Beaudry v. Beaudry*, 132 Vt. 53, 312 A.2d 922 (1973), is distinguishable from this case, and the holding there does not apply to a family temporarily situated in Vermont.

apparently attended secondary school at Miss Porter's in Connecticut before going to college in New York. Plaintiff testified she would live with her daughter's godmother in New York if she was ever between houses. She always maintained a post office box in New York. The fact that plaintiff was served with a motion to modify while in Vermont in between states of residency is a mere fortuitous event, hardly a rationale for upsetting the expectation established many years before that Demetria would benefit from child support until age twenty-one.

I respectfully dissent.