750 A.2d 724

Thomas HOLBROOK

v.

Susan CUMMINGS.

No. 964, Sept. Term, 1999.

Court of Special Appeals of Maryland.

May 1, 2000.

David B. Lamb, Washington, DC, for appellant.

Anne Meister, Washington, DC, for appellee.

Argued before ADKINS, KRAUSER and PAUL E. ALPERT (Ret., specially assigned), JJ.

PAUL E. ALPERT, Judge (Ret., specially assigned).

On April 7, 1986, the New York Supreme Court entered a judgment of absolute divorce dissolving the marriage between appellant Thomas Holbrook and appellee Susan Cummings. The New York Order directed Mr. Holbrook to pay child support in the amount of $250 per week effective April 7, 1986 for the couple's only child, Tanner, who was born on October 11, 1980. The Order did not specify a date on which Mr. Holbrook's obligation to pay child support would end, although under New York law, the obligation to pay child support terminates when a child reaches the age of twenty-one. N.Y. Fam. Ct. § 413 (McKinney 1999). The New York Court also entered judgments against Mr. Holbrook in the amount of $25,939.75, pursuant to prior orders and in the amount of $10,373.54 for legal fees. Prior to the entry of the New York Order, Mr. Holbrook relocated to California. Subsequently, Ms. Cummings and Tanner relocated to Maryland. In 1993, Mr. Holbrook moved to the District of Columbia.

In October 1995, Ms. Cummings filed in Maryland an application for enforcement of the child support provisions of the New York Order. In 1996, a proceeding was instituted pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) and ultimately registered in the District of Columbia as URESA Action No. 21595. Mr. Holbrook responded by filing a complaint in the Circuit Court for Montgomery County, Maryland disputing paternity and the validity of the New York Order. Blood testing results reported a 99.88% probability that Mr. Holbrook was Tanner's father.

On June 13, 1997, Mr. Holbrook amended his complaint in the Circuit Court for Montgomery County to request visitation and modification of child support. Ms. Cummings filed a Motion to Dismiss. The circuit court ruled that the issue of visitation could proceed in the Maryland court, but the issue of modification of child support would be stayed pending resolution of the ongoing action in the District of Columbia.

On September 13, 1997, Mr. Holbrook filed a motion to modify child support with the Superior Court of the District of

Columbia. On September 2, 1998, that court held that, under the Uniform Interstate Family Support Act (UIFSA), it had jurisdiction to hear the petition for enforcement purposes only. The Superior Court determined that, pursuant to UIFSA, the issue of modification of the New York Order would have to be heard in either a state having continuing exclusive jurisdiction as stated under the act, or in the state with jurisdiction over the non-moving party.

On October 13, 1998, the Circuit Court for Montgomery County lifted the stay on the issue of child support modification. A hearing was held before Domestic Relations Master Salant on February 18, 1999. Mr. Holbrook argued that, under Maryland law, the obligation to pay child support terminates when a child reaches the age of eighteen and, therefore, his obligation to pay child support should terminate because Tanner had already turned eighteen years old. Master Salant issued his report and recommendations on February 18, 1999. He determined that, pursuant to UIFSA, New York law should apply with respect to the duration of Mr. Holbrook's obligation to pay child support and, therefore, he should be required to pay child support until Tanner turns twenty-one years of age. Applying Maryland law, Master Salant recommended that child support be reduced from $250 per week to $453 per month effective March 1, 1999. The master determined that equity would not be served by making the modification of child support retroactive to June 13, 1997, the date Mr. Holbrook's amended complaint was filed. In reaching this conclusion, the master considered Mr. Holbrook's pattern of obstructing enforcement of his child support obligation and the significant arrearages that had accrued.

Both Mr. Holbrook and Ms. Cummings filed exceptions to the Master's Report and Recommendations. A hearing was held on May 13, 1999, and the Circuit Court for Montgomery County (Turner, J.) denied Mr. Holbrook's exceptions. The circuit court determined that modification of the New York Order to provide for termination of Mr. Holbrook's child support obligation at the time Tanner reaches the age of eighteen was not permitted under UIFSA. The Circuit Court

also held that a retroactive reduction would not be in the best interest of the child, who had turned eighteen on October 11, 1998. This appeal followed.

Mr. Holbrook presents two issues for our consideration which we have rephrased as follows:

I. Whether the Circuit Court erred in determining that, under UIFSA, New York's age of majority governs with respect to Mr. Holbrook's obligation to provide child support; and,

II. Whether the Circuit Court erred in denying Mr. Holbrook's request for a retroactive reduction in his child support obligation.

We answer in the negative and affirm.

## I.

Mr. Holbrook contends that the court below erred in concluding that the provisions of UIFSA provide the exclusive remedy for enforcement and modification of the New York Order at issue in this case. He maintains that because UIFSA is not the exclusive remedy for enforcement of support orders, Maryland law governs with respect to his obligation to provide child support for his son, including the age at which that obligation should terminate.

Preliminarily, we note the disingenuous nature of Mr. Holbrook's argument that UIFSA does not apply in this case. Mr. Holbrook relied heavily on UIFSA in his Supplemental Memorandum in Support of Motion to Lift Stay when arguing that the lower court had jurisdiction to register and modify the New York Order. This inconsistency notwithstanding, we find that UIFSA is the exclusive remedy available under the facts of this particular case.

UIFSA was originally drafted by the National Conference of Commissioners on Uniform State Laws in an effort to revise and replace URESA (as originally adopted in 1950 and amended in 1958) and its revised version, the Revised Uniform Reciprocal Enforcement Act of 1968 (RURESA). UIFSA was

approved by the National Conference of Commissioners on Uniform State Laws in 1992 and ratified by the American Bar Association in February 1993. In 1996, UIFSA was amended. Most United States jurisdictions have since enacted UIFSA as their local law.[1] *See* 9 U.L.A. 235–236, 238–243 (1999).

Maryland substantially adopted the major provisions of UIFSA effective January 1, 1997, as Md.Code Ann. (1997), Fam. Law Art. § 10–301 *et seq.* Section 10–303 of the Act provides that the "[r]emedies provided by this subtitle are cumulative and do not affect the availability of remedies under other law." Mr. Holbrook relies primarily on this section and two cases, *Barrell v. Barrell*, 288 Md. 19, 415 A.2d 579 (1980), and *Cavallari v. Martin*, 732 A.2d 739 (Vt.1999), to support his contention that UIFSA is not the exclusive remedy in this case.

The *Barrell* case involved the issue of whether a foreign alimony order must be registered under URESA. The Court of Appeals rejected appellant's contention that a party moving to enforce a foreign alimony decree may proceed only by way of the registration provisions of URESA and may not invoke the general equity jurisdiction of the court.

In deciding the *Barrell* case, the Court of Appeals relied upon *McCabe v. McCabe*, 210 Md. 308, 123 A.2d 447 (1956). The *McCabe* case also involved URESA. The issue in that case was whether a court of equity in Maryland could enforce by sanctions customarily used by equity courts a decree for alimony entered by a court of another state. The Court of Appeals held that an equity court can enforce a decree of another state, both as to alimony accrued and to accrue, and may use for its enforcement the same equitable remedies and sanctions it could use to enforce a decree it had duly entered in the first instance.

---

1. An extensive discussion of the history of UIFSA is set forth in the American Bar Association's *Family Law Quarterly.* *See* Sampson, J., *Uniform Interstate Family Support Act* (1996)(*with More Unofficial Annotations*), 32 Fam. L.Q. 385 (1998).

Neither of these cases applies to the situation at hand. Both the *Barrell* case and the *McCabe* case were decided when URESA was in effect and, unlike the case at hand, both dealt with enforcement of alimony decrees. Under URESA, child support and spousal support were treated the same. Under UIFSA, however, they are treated quite differently, with more stringent provisions governing modification of child support orders. *Cf.* Md. Fam. L. §§ 10–348 to 10–353 and Md. Fam. L. § 11–101 *et seq.*

Although cumulative remedies are available under UIFSA, they are not available in the situation presented in this case. The rationale for this was articulated by Professor Sampson in the *Family Law Quarterly:*

> The existence of procedures for interstate establishment, enforcement, or modification of support or a determination of parentage in UIFSA does not preclude the application of the general law of the forum. Even if the parents live in different states, for example, a petitioner may decide to file an original action for child support (and most likely for other relief as well) directly in the state of residence of the respondent and proceed under that forum's generally applicable support law. In so doing, the petitioner thereby submits to the personal jurisdiction of the forum and foregoes reliance on UIFSA. Once a child support order has been issued, this option is no longer available to interstate parties. Under UIFSA, a state may not permit a party to proceed to obtain a second support order; rather, in further litigation the tribunal must apply the Act's provisions for enforcement of an existing order and limit modification to the strict standards of UIFSA.

32 Fam. L.Q. at 418–19.

Mr. Holbrook relies on *Cavallari v. Martin,* 169 Vt. 210, 732 A.2d 739 (1999), a case decided by the Supreme Court of Vermont, in support of his contention that Maryland law should apply to determine when his obligation to pay child support should terminate. In *Cavallari,* the father, a Vermont resident, sought to modify a New York child support

decree that obligated him to pay support until his child turned twenty-one years old, on the ground that Vermont required a parent to support a child only until the age of eighteen years. The Family Court judge refused to modify the father's support obligation, but Vermont's Supreme Court reversed and held that the Family Court was required to apply Vermont law and modify the decree as requested.

The *Cavallari* case differs significantly from the case before us. *Cavallari* was decided when RURESA was in force in Vermont; however, that Act did not apply because it covered only situations in which the child support obligor and obligee are in different states or different counties of the same state. In *Cavallari*, all of the parties resided in the same county in Vermont. In its opinion, Vermont's Supreme Court noted that RURESA had been replaced by UIFSA, effective January 1, 1998. The Court recognized that, unlike RURESA, UIFSA contains substantive restrictions that apply to modification decisions, one of which provides that a Vermont court may not modify any aspect of a child support order that may not be modified under the law of the issuing state. Accordingly, under UIFSA, because a New York court could not modify the order to reduce its duration, a Vermont court cannot do so. UIFSA, however, did not have any bearing on the outcome of the *Cavallari* case, since all of the parties resided in the same county in Vermont. In reversing the judgment of the Family Court, the Supreme Court specifically stated that the adoption of UIFSA "would yield a different result in a modification request first presented to the family court today." *Cavallari*, 732 A.2d at 740.

Indeed, in the case at hand, Mr. Holbrook's modification request yields the very result contemplated by the *Cavallari* court. Although no Maryland cases have addressed the issue of whether a Maryland court can modify a support order issued by a foreign court so as to reduce its duration, the Supreme Court of Nebraska recently decided that issue in *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999). Relying on the official comment to the Uniform Interstate

Family Support Act, § 610, 9 U.L.A. 428, 429–31 (Supp.1999), the Nebraska court stated, in part, as follows:

> Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions [as set out in· § 42–746(a) ] are met. . . . The intent [of this scheme] is to eliminate multiple support orders to the maximum extent possible consistent with the principle of continuing, exclusive jurisdiction that pervades the Act.
>
> . . . .
>
> Subsection (b) states that if the forum has modification jurisdiction because the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders. However, Subsection (c) prevents the modification of any final, nonmodifiable aspect of the original order. For example, if child support was ordered through age 21 in accordance with the law of the issuing state and the law of the forum state ends the support obligation at 18, modification by the forum tribunal may not affect the duration of the support order to age 21.

Taken together, these comments and proper statutory construction direct that the substantive law of Massachusetts would apply to a proceeding for a modification of child support if Massachusetts had continuing, exclusive jurisdiction over the child support order; for instance, if one of the parties still lived in Massachusetts. However, once Nebraska assumes continuing, exclusive jurisdiction, then Nebraska's judges are to apply familiar, local rules. In doing so, Nebraska courts are to apply Nebraska's substantive law to any provision of the child support order that could have been modified under Massachusetts law; by the same taken, Nebraska may not modify any aspect of the Massachusetts child support order which could not have been modified in Massachusetts.

*Groseth,* 600 N.W.2d at 168 (citing official comment to Uniform Interstate Family Support Act § 610, 9 U.L.A. 428, 429–31 (Supp.1999)).[2]

Section 10–350(c) of Maryland's codification of UIFSA contains precisely the same prohibition on modification of child support orders as Nebraska's Act. It provides, in relevant part, as follows:

> A tribunal of this State may not modify any provision of a child support order that may not be modified under the law of the issuing state.

It is undisputed that New York law requires parents to support their children until they reach twenty-one years of age and that the duration of Mr. Holbrook's obligation to provide such support cannot be reduced under New York law. *See* N.Y. Fam. Ct. § 413 (McKinney 1999); *Shabazian v. Shabazian,* 246 A.D.2d 688, 667 N.Y.S.2d 510 (1998)(Family Court Act provision requiring parents to support child until he or she reaches 21 years of age supersedes prior support order stating that father's child support obligation would end when child reached 18 years of age). Accordingly, the judge below acted properly in denying Mr. Holbrook's request to reduce the duration of his obligation to provide child support for his son.

## II.

Mr. Holbrook contends that the court below erred in denying his request for a retroactive reduction in his child support obligation. The decision to make a child support award retroactive to the time of filing is one reserved for the trial court and will only be reversed upon a showing that the

---

**2.** The official comments relied upon by the Nebraska Court accompany the 1996 amended version of UIFSA and can be found at the conclusion of § 611 (Modification of Child Support Order of Another State), 9 U.L.A. 370–73 (1999 Master Edition).

court abused its discretion. Md.Code, Fam. Law Ann. § 12–104(b); *Tanis v. Crocker*, 110 Md.App. 559, 570–71, 678 A.2d 88 (1996); *Krikstan v. Krikstan*, 90 Md.App. 462, 472–73, 601 A.2d 1127 (1992). Maryland law does not require that modifications of child support be retroactive. It provides only that "[t]he court may not retroactively modify a child support award prior to the date of the filing of the motion for modification." Fam. Law § 12–104(b). Under Maryland law, Mr. Holbrook has no right to restitution or recoupment following a modification of child support. *Tanis*, 110 Md.App. at 570–71, 678 A.2d 88; *Krikstan*, 90 Md.App. at 473, 601 A.2d 1127.

We find no evidence that the trial court abused its discretion in denying Mr. Holbrook's request. The trial judge did not adopt the master's recommendation on this issue, but rather exercised his independent judgment in ruling that retroactive modification was not in the best interest of Tanner Holbrook. The judge considered the complete transcript of the hearing before the master, the master's report and recommendations, and the fact that Mr. Holbrook was in arrears on his existing child support obligation. Since we find no evidence to support Mr. Holbrook's contention that the trial court abused its discretion, we affirm the court's decision.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**